·(No. 35418.—

SINCLAIR PIPE LINE COMPANY *et al.,* Appellees *vs.* THE
VILLAGE OF RICHTON PARK *et al.,* Appellants..

*Opinion filed May 20, 1960.*

Benjamin S. Adamowski, State's Attorney, and Henry W. Lehmann, both of Chicago, (Francis X. Riley, and Richard V. Houpt, Assistant State's Attorneys, of counsel,) for appellants.

Nash, Ahern & McNally, of Chicago, (Thomas D. Nash, Jr., of counsel,) for appellees.

Mr. Justice Schaefer delivered the opinion of the court:

Three questions are presented for decision in this zoning case. The first is whether the plaintiffs are entitled to maintain the action against the contention that they failed to

exhaust their administrative remedies before commencing it. The second involves the correctness of the judgment of the trial court in holding the provisions of the applicable zoning ordinance unreasonable and invalid insofar as it applies to the property of the plaintiffs. The third concerns the kind of relief that may be ordered by a court after it has determined that an existing zoning ordinance is invalid.

The property involved is 15 acres of undeveloped farm land owned by the plaintiffs as tenants in common. It is located on the west side of Illinois Highway 54 (Governor's Highway), approximately one-half mile south of its intersection with Sauk Trail in Richton Township, Cook County. The property was acquired by the plaintiffs in 1955. Prior to their purchase, it had been annexed to the village of Richton Park. Subsequent to the purchase, this property, together with another 30-acre tract owned by the plaintiffs which is not in issue, was disconnected from the village. Under the provisions of the Cook County zoning ordinance, the property was automatically classified as R-3 upon disconnection from the village of Richton Park. The basic use in this classification is single-family residences with a minimum of 20,000 square feet per lot.

Before they began this action the plaintiffs petitioned the county board of commissioners for an amendment to the zoning ordinance reclassifying the property in question from R-3 to I-1 (light industry). The petition was referred to the zoning board of appeals for hearing and recommendation. The board recommended that the amendment be adopted, but it failed to receive the requisite majority of the board of commissioners and was not adopted.

The complaint prayed for a judgment declaring the zoning ordinance invalid and void as applied to plaintiffs' property on the basis that the existing R-3 classification was arbitrary and unreasonable. The defendants contend that the plaintiffs are not entitled to litigate that issue in this proceeding because they failed to exhaust their administra-

tive remedies. This contention is based on the premise that although plaintiffs were unsuccessful in their petition for an amendment to the ordinance, they were required also to seek a variation before commencing this action.

It is true that, unlike zoning statutes in many States, the County Zoning Enabling Act (Ill. Rev. Stat. 1959, chap. 34, pars. 3151-3204) allows use variations. Zoning regulations may be varied, however, only in harmony with their general purpose when "practical difficulties or particular hardship" make enforcement of the "strict letter" of existing restrictions unreasonable. (Ill. Rev. Stat. 1959, chap. 34, par. 3154.) The variation procedure as prescribed in the act is designed to provide a flexible method for relaxing the rigid requirements of the ordinance in cases of individual need. It is not designed to work major changes in the zoning plan. Amendments by the legislative body are available for that purpose. Ill. Rev. Stat. 1959, chap. 34, par. 3158.

The property here involved is a large tract that constituted a major portion of the residential zone of which it is a part. A variation for an industrial use would radically alter the nature of the entire zone. Under these circumstances the authority of the zoning board of appeals to grant a variation is open to serious question. An aggrieved landowner must make reasonable efforts to obtain local relief before bringing his grievance to court. But we do not believe that he should be compelled to expend his time and resources seeking relief that may be beyond the authority of local officials to give. We hold therefore that under these circumstances the plaintiffs' efforts to obtain local relief by way of amendment to the zoning ordinance were reasonable, and were sufficient to entitle them to maintain this action.

A description of the property and the surrounding area is necessary for a consideration of the issue of the validity of the ordinance in so far as it classified the plaintiffs' prop-

erty for residential use. Adjoining the property in question on the south is a 26-acre tract, also owned by the plaintiffs, on which there are located two 96,000-barrel crude oil storage tanks and one 80,000-barrel crude oil storage tank. A one-story building which houses a communication center, machinery and pumps which regulate the flow of oil to and from the tanks is located on the property here involved, together with a 6,000-barrel water pond and a well used in connection with an automatic fire extinguisher system. The plaintiffs also own another 30-acre tract extending north from the west side of the subject property to the Sauk Trail.

Plaintiffs' 26-acre tract has always been in the unincorporated area of the county and is zoned I-1, a light industry classification. Approximately eight of the 26 acres were so zoned at the time the original county zoning ordinance was adopted in 1940. By an amendment to the ordinance in 1952, the remaining 18 acres were so classified.

Fronting on Highway 54 and adjacent to the 26-acre tract are two houses. At the rear of the southernmost house there is a large commercial-type garage and storage yard in which are located sandblasting and welding machinery, trucks and some old truck bodies classified as junk. A sign erected on Highway 54 advertises that welding and sandblasting operations are conducted on the premises.

A platted subdivision containing approximately 83 lots extends southward from the intersection of Sauk Trail and Highway 54 to within approximately 200 yards of the subject premises. This subdivison has been in existence since 1941. Neither sales of lots nor construction of homes has taken place within the subdivision from the time it was recorded to the time of trial, and the land is devoted to agricultural uses.

South of the 26 acres on which the three existing crude oil tanks are located is a subdivision which is zoned in the F (farming) district. The plat of this subdivision was re-

corded ten months after the last 18 acres of the 26-acre tract adjoining it on the north had been zoned for light industry. Approximately 25 single-family residences have been erected in this subdivision. To the south of this subdivision is a private airport. West of the subject property, from the private airport north to Sauk Trail, the land is devoted to agricultural uses.

On the east side of Highway 54, approximately 400 or 500 feet north of the subject premises, a large lumber yard is in the process of construction. The main line of the Illinois Central railroad lies immediately east of and parallel to State Highway 54, and this property is served by a spur track of that railroad.

The three tanks located on the 26 acres adjoining the subject premises were established to store crude oil brought by underground pipe lines from oil fields in the southern and southwestern States. Upon demand the oil is pumped from the tanks to nearby refineries. No oil is transported to or from the tanks by means of trucks nor does the construction of the tanks permit such transportation.

Plaintiffs desire to erect, on the 15-acre tract, three additional 80,000-barrel capacity tanks for the exclusive purpose of accommodating and transporting crude oil. The same facilities that serve the three tanks on the adjoining 26 acres would be used to operate the three proposed tanks. No additional surface transportation at the site would be occasioned by the erection of the proposed tanks. No noise emanates from the machinery and pump structure except a slight hum which is audible for a distance of approximately 50 feet. No unpleasant odors emanate from the tanks.

One of the plaintiffs' witnesses, an expert in zoning and city planning, testified that the proposed use would have no detrimental effect on the surrounding area and would represent a proper use of the subject premises and that it would not affect the homes located in the subdivision to the south.

Two real-estate brokers, familiar with the area surrounding the subject premises, testified that the highest and best use of the area is for light industry; that under the existing classification the property is worth $700 to $800 per acre, and that if zoned for industrial uses it was worth about $3,000 to $3,500 per acre. They pointed out that the subject property was not well situated for residential development, that it was only 330 feet wide and part of it was low, that there were no sewer or water improvements nearby, and that there were no streets within the area and no outlet to Highway 54.

The defendant county and the intervenor village moved for a finding in their favor at the close of the plaintiffs' evidence, and when that motion was denied they offered no evidence. The uncontradicted evidence shows that the existing uses and the zoning of nearby property characterizes the subject property as industrial and that the trial court did not error in finding the zoning regulation "arbitrary, unreasonable and unrelated to the public health, safety, comfort, morals and welfare."

The remaining issue concerns the kind of judgment order that should have followed that finding. The judgment that was entered granted to plaintiffs "as a variation from the R3 zoning classification, the right to erect on said 15 acres the said three 80,000-barrel capacity tanks for the accommodation and transportation of crude oil  *  *  *," and it directed the county to issue all permits necessary for the erection of the tanks upon compliance with other applicable regulations.

All of the parties challenge the propriety of the order. They assert here, as they did in the trial court, that the only order which the court could enter was one which invalidated the zoning ordinance and left the property unzoned. This the trial judge refused to do, on the ground that all of the proof related to the three tanks to be placed upon the property, and no evidence had been offered as

to the effect of other industrial uses upon adjacent property. He pointed out that "if this were some case involving big cement trucks trundling across here, with nauseating fumes coming out, or loud manufacturing noises, I might decide it differently."

The problem thus presented as to the kind of relief to be awarded in a zoning case is a recurrent one, and one toward which this court has not manifested an unwavering attitude. In *First National Bank* v. *County of Lake,* 7 Ill.2d 213, 224, for example, we said that "While there was much testimony in the trial court as to proposed uses, most of that evidence, as the trial court observed, was beyond the scope of legitimate inquiry." And in *LaSalle National Bank* v. *Chicago,* 4 Ill.2d 253, 258, we stated: "If a zoning ordinance is improper a court should not go beyond its power to declare the same void, the effect of which in the instant case would be to leave the property unzoned." On the other hand, in *Tower Cabana Club* v. *City of Chicago,* 5 Ill.2d 11, the opinion emphasized the exact type of improvement that the plaintiff intended to place upon the property, and a judgment was sustained which held that the plaintiff had the right to use the property "for any of the purposes permitted under sections 7 and 8 of the original Chicago zoning ordinance of 1923," an ordinance which had been repealed 11 years earlier.

These, and similar apparent inconsistencies, are attributable in part to the fact that the opinions of the court respond to the contentions of counsel, and in part also to the peculiar nature of zoning litigation, and the number of remedies available to one who seeks to challenge the validity of a zoning ordinance. (Cf. Babcock, The Unhappy State of Zoning Administration in Illinois, 20 U. of C.L.R. 509, 512.) The ultimate legal determination that must be made in every case is whether the existing restrictions on the use of the land in question are arbitrary or unreasonable. This consideration underlies the view of the *LaSalle Bank* and

*First National Bank cases,* that the proposed future uses of the property are not relevant to the court's deliberations and that the court's judgment should not prescribe the uses to which the land may be put if the present restrictions are declared void. In reaching the conclusion that a zoning ordinance is void as to specific property, however, the court must decide whether the restriction has a basis in public health, safety and welfare, in the light of the uses to which surrounding property is or may be put, the care with which the communuity has undertaken to plan its land use development, and the evidence or lack of evidence of community need for the use proposed by the plaintiff. Normally the land owner is interested particularly in a specific use which he proposes, and so it is natural that he will try the case and the judge will reach his decision in terms of the reasonableness of excluding that specific use. These factors account for the emphasis on the particular proposed use found in the *Tower Cabana Club* and some other cases.

Because zoning cases are tried in this manner, two equally undesirable consequences may ensue if, following the approach of the *LaSalle Bank case,* the property is left unzoned as the result of a decree declaring a zoning ordinance void. The municipality may rezone the property to another use classification that still excludes the one proposed, thus making further litigation necessary as to the validity of the new classification. Several cases suggest this possibility. (Cf. *Franklin* v. *Village of Franklin Park, post,* p. 381; *Illinois Mason Contractors, Inc.* v. *City of Wheaton, post,* p. 462; *Nott* v. *Wolff,* 18 Ill.2d 362; *Fifteen Fifty North State Bldg. Corp.* v. *City of Chicago,* 15 Ill.2d 408; *Deere Park Civic Association* v. *City of Chicago,* 347 Ill. App. 346.) The present case illustrates the other possibility:—that a decree which was induced by evidence which depicted a proposed use in a highly favorable light would not restrict the property owner to that use, and he

might thereafter use the property for an entirely different purpose.

In our opinion, it is appropriate for the court to avoid these difficulties by framing its decree with reference to the record before it, and particularly with reference to the evidence offered at the trial. In most of the cases that have come before us in recent years, a specific use was contemplated and the record was shaped in terms of that use. In such cases the relief awarded may guarantee that the owner will be allowed to proceed with that use without further litigation and that he will not proceed with a different use. If the land owner asserts a broader challenge in terms of a class of uses, the decree may be shaped accordingly. Such decrees will not, of course, solve all potential problems for all time, but neither will a decree the effect of which is to leave the property completely unzoned. In either case further action by the appropriate legislative body is indicated.

It is objected that by this procedure the court goes beyond the realm of adjudication and itself becomes a zoning agency. But if the validity of a zoning ordinance is challenged by *mandamus* to compel the issuance of a building permit, a successful plaintiff is entitled to a judgment directing the issuance of a building permit in accordance with the plans and specifications he submitted. When a plaintiff seeks under the Administrative Review Act to reverse an administrative determination denying his application for a variation, the appropriate relief is an order directing that a specific variation be allowed. The end result of the procedure which we adopt for declaratory judgment and injunction cases does not differ from that in litigation involving *mandamus* and administrative review.

We do not hold that every detail of a proposed structure is admissible in evidence over objection or that, except in a *mandamus* action, the court may require the land owner

to build in accordance with exact specifications. Intimate details as to the construction of the proposed building are irrelevant in a proceeding in which the only issue that has been raised is the reasonableness of excluding certain uses or classes of uses. Only those general characteristics which bear on the reasonableness of the zoning restriction are admissible in such a case, and the judgment may be shaped by reference to these characteristics only. Cf. *Nelson* v. *City of Rockford, post,* p. 410.

It was unnecessary for the trial court to characterize its action by analogy to a variation, but the characterization did no harm. The judgment of the superior court of Cook County is affirmed.

*Judgment affirmed.*