Dale Harshman, et al., Plaintiffs-Appellees, v. The City of DeKalb, a Municipal Corporation, Defendant-Appellant.

Gen. No. 65–11.

Second District.

November 5, 1965.

Edward F. Diedrich, of DeKalb, for appellant.

John A. Liefheit, of DeKalb, for appellees.

ABRAHAMSON, P. J.

Plaintiffs-Appellees, hereinafter called the "owners," brought suit in the Circuit Court of DeKalb County to declare that the existing zoning ordinance of the defendant-appellant, City of DeKalb, hereinafter called the "City," was unconstitutional and void as it affected their property and to permit them to use the property for business.

The subject property is two adjoining lots on the northeast corner of 13th Street and Sycamore Road in the City of DeKalb. The lots are each improved with single-family frame residences. Together they have a frontage of 194.2 feet on Sycamore Road and a depth of approximately 152 feet. The lots were annexed to the City in 1954 and zoned single-family residential. Sycamore Road is, at this point, a heavily traveled, four-lane highway.

Immediately adjoining the subject lots to the north is a shopping center known as DeKalb Market which in-

cludes a Jewel Tea store, a Spiegel's department store, a drugstore and several other, smaller, retail businesses. The front 120 feet, more or less, of the Market area is used for a paved parking area with the buildings themselves set behind. The Market area was taken into the City in 1958 in accordance with a preannexation agreement whereby the City agreed to zone it for business. North of the Market on the east side of Sycamore Road, the property is all zoned, and largely used, for business for over a mile.

The property on the west side of Sycamore Road is not in the City but commencing immediately opposite the Market and proceeding north it is extensively developed for small businesses.

There is a small alley separating the subject lots and the DeKalb Market and another alley directly across Sycamore Road marking the present boundary between residential and business uses on that side of the road.

13th Street is known as Hollister Street on the other side of Sycamore Road and continues for approximately a quarter mile before ending at the DeKalb Sanitary District Treatment Plant. There was some testimony that odors from the Plant could occasionally be detected at the intersection.

Sycamore Road south of the intersection with 13th and Hollister Streets is almost exclusively residential, except for an occasional nonconforming business use, into the heart of the City.

Two real estate experts testified for the owners and stated that in their opinion the property is worth between $27,500 to $29,000 for residential purposes and between $71,000 to $75,000 for business.

The City presented evidence that if the two lots were rezoned for business purposes there would be a significant increase in traffic at the intersection. This traffic increase, they urged, would be a hazard to school children in the area, create parking difficulties and result in a

dramatic increase in the number of accidents. They also argued that the alley between the two lots and the DeKalb Market served as an admirable and natural boundary between the business use of the Market and the residences. They offered, as sound planning and a firm policy of the City, the theory that all four corners of any intersection should be similarly zoned. Acting on this theory, the change in the zoning of these lots would inevitably result in a further encroachment of business into the residential heart of the City.

At the conclusion of the hearing the trial court found that the existing zoning restrictions as they affected the owner's property were void in that they amounted to an unconstitutional confiscation without compensation and, in addition, ordered that they could make any improvements lawfully permitted under the present business classification of the City's zoning ordinance. A post-trial motion by the City to vacate the judgment order was denied and this appeal results.

It is well established that there is a presumption in the favor of the validity of zoning ordinances which can only be overcome by clear and convincing proof that the ordinance is arbitrary and unreasonable. Bennett v. City of Chicago, 24 Ill2d 270, 273, 181 NE2d 96; Jans v. City of Evanston, 52 Ill App2d 61, 67, 68, 201 NE2d 663.

It is also clear that the mere fact that property would be substantially more valuable if another use were permitted is not, in itself, sufficient reason to invalidate an existing zoning ordinance. Cosmopolitan Nat. Bank of Chicago v. Mt. Prospect, 22 Ill2d 463, 470, 177 NE2d 365. A reviewing court, in determining the validity of a zoning ordinance, will consider a number of factors. The Supreme Court, in the case of Tillitson v. City of Urbana, 29 Ill2d 22, at page 27, 193 NE2d 1, enumerated some of these factors as follows:

> "In determining whether or not a particular ordinance serves the public interest, the court may

351

consider the uses and zoning of nearby property, the extent property values are diminished by the restrictions, the benefits sought to be attained by the ordinance, the relative gain to the public as compared by the hardship imposed upon the property owner, and the suitability of the property for the zoned purposes. . . . If the public gain is small when compared with the hardship imposed upon the individual property owner, the restriction constitutes an unreasonable exercise of the police power." (Citations omitted.)

█ When we use these factors in considering the instant case, we agree with the trial court that the existing zoning restrictions imposed by the City are unreasonable and arbitrary as they affect the subject property. The proximity of the Treatment Plant, the extensive use of Sycamore Road, the disparity in values between the residential and business uses, the general character of the area and, most important, the recent development of a shopping center immediately adjoining the property, all indicate that the existing restrictions are unreasonable. Furthermore, we are not convinced that an alley is necessarily a natural boundary between residential and business uses and that a street is not.

██ The power of courts to determine the validity of zoning ordinances, as here, is generally beyond dispute. However, it is equally beyond dispute that courts do not possess the power to zone or rezone property since that function properly belongs to a legislative, not a judicial, body. Treadway v. City of Rockford, 24 Ill2d 488, 493, 182 NE2d 219.

█ The practical effect of declaring an existing zoning ordinance null and void in regard to a particular piece of property is to leave that piece of property in a condition which, for lack of a better description, has been called unzoned. To avoid the obvious dilemma of such

a situation, recent cases have held that the court may frame its order in reference to a specific proposal before it and find that the contemplated use would be a reasonable one. Sinclair Pipe Line v. Village of Richton Park, 19 Ill2d 370, 167 NE2d 406; Franklin v. Village of Franklin Park, 19 Ill2d 381, 167 NE2d 195.

The aim of these decisions is to avoid the possibility of a rezoning of the property to some other undesirable classification and, thus, invite further litigation, and to prevent any exploitation by the owner of the fact that his property is, at least temporarily, unzoned. To those ends, the wisdom of these decisions seems clear.

■■■ It is also apparent that the courts must exercise this authority with extreme care to avoid any encroachment into the legislative function of zoning. It is imperative that there be clear evidence before the court of the specific use to which the owner intends to develop his property and the order framed in reference to it. Sinclair Pipe Line v. Richton Park, ibid.

The case of Reeve v. Village of Glenview, 29 Ill2d 611, 195 NE2d 188, involved facts with some similarity to our own. The trial court found the existing residential zoning unreasonable, null and void as it affected plaintiff's property and found further that the property was subject to an earlier, business use, classification. No evidence had been offered as to a specific use contemplated by the owner. In reversing the trial court, the Supreme Court said, in part, as follows: ·

> "The court had no authority to impose the business use classification on the subject property. Courts have authority to pass upon the validity of a zoning ordinance, but this does not include the legislative function of determining the ultimate zoning classification of the area. . . . An exception to this rule was laid down in Sinclair Pipe Line Co. v. Village of Richton Park . . . , where we held the

court empowered to avoid undesirable results by framing its decree with reference to the record before it. However, the Sinclair case and others following it were cases in which the evidence showed the specific proposed use of the property. Where the record fails to show any evidence of the use proposed, this rule does not apply. . . ." (Citations omitted.)

■ The record in the instant case discloses nothing of the specific intentions of the owners in regard to the use of their property. In the absence of such evidence, the trial court could not frame a judgment to effectuate its findings as to the rights of the parties and conclude the controversy between them. Under these circumstances, the finding by the trial court that the property could be used for any business use permitted under the existing ordinance, is clearly in error.

The judgment of the trial court will be affirmed as to the declaration that the existing zoning is void as it affects the subject property. It is reversed and remanded insofar as it permits the owners to make any improvements permitted under the business classification of the zoning ordinance. Such remandment is with directions that the trial court hear further evidence relative to the business use to which plaintiffs purpose to devote their property and the compatibility of such use with the residential uses of the surrounding property.

Affirmed in part and reversed and remanded in part.

MORAN and DAVIS, JJ., concur.