La Salle National Bank, Trustee Under Trust No. 36779, and Richard E. Carlson, Plaintiffs-Appellees, v. City of Chicago, a Municipal Corporation, Defendant-Appellant.

Gen. No. 53,422.

First District, First Division.

October 30, 1970.

Richard L. Curry, Corporation Counsel of City of Chicago (Marvin E. Aspen, Head of Appeals and Review Division, and Ronald S. Cope, Special Assistant Corporation Counsel, of counsel), for appellant.

Thomas W. McNamara, of Chicago (Jenner & Block, of counsel), for appellees.

MR. JUSTICE ADESKO delivered the opinion of the court.

Plaintiffs, LaSalle National Bank, as Trustee and Richard E. Carlson, as beneficial owner, brought a declaratory judgment action against the City of Chicago to declare the Chicago Zoning Ordinance invalid as applied to the property in question. The trial court entered a judgment order which declared the R–1 single-family residence classification void as applied to the subject property but specifically rejected the plaintiffs' proposed plan of development. Instead, the court entered an order which would permit the construction of a "multiple-family apartment project subject to all applicable valid ordinances of the City of Chicago and to the R–3 General Residence District provisions of the Chicago Zoning Ordinance." Defendant city appeals the judgment order.

The subject property is a vacant lot at the northwest corner of 103rd Street and Prospect Avenue in the Beverly community on Chicago's south side, with a frontage of 200 feet on 103rd Street and 198½ feet on Prospect Avenue for a total area of 39,700 square feet. The property is part of a large R–1 single-family residence district which extends from Prospect Avenue on the east to approximately Western Avenue on the west and from 103rd Street on the south to approximately 95th Street on the north. The beneficial owner, Richard Carlson, testified that the area was 95 percent single-family, and

another of plaintiffs' witnesses described the area as 90 percent single-family.

During the past ten years no new single-family residence has been built on 103rd Street within three blocks of the subject property. All of the new construction has been in the form of multiple-family developments. Immediately to the east of the property, across Prospect Avenue, is the Olson Property, where this court sustained a density of 1,940 square feet of floor area per dwelling unit. Olson v. City of Chicago, 122 Ill App2d 147, 251 NE2d 318 (1969). To the west of the property is the Hennessey property which has been improved with six townhouses and twelve apartment units pursuant to a court decree which allowed plaintiffs to construct eighteen units. Also, in the immediate vicinity are the Townsend developments, where pursuant to court decree, the thirty-five units of the two developments range in density from 2,500 to 3,000 square feet of lot area per dwelling unit. Consequently, the trend of development in the area has been multiple-family.

The trial court declared the existing R–1 classification void as applied to the subject property. A zoning classification is void as applied to a particular property where it bears no real or substantial relation to the public health, safety and wefare, Schwinge v. Village of Niles, 101 Ill App2d 406, 412, 243 NE 255 (1969), and that the trend of development in the immediate area of the subject property is an important consideration in determining whether a particular zoning classification bears a substantial relation to the publc health, safety and welfare. Guaranty Bank & Trust Co. v. City of Chicago, 112 Ill App2d 378, 387, 251 NE2d 384 (1969). After an examination of the entire record, we conclude that the trial court did not err in part A of its judgment order which declared the R–1 ordinance void as applied to the subject property.

The trial court also specifically rejected the plaintiffs' proposed plan of development but permitted construction of a multiple-family apartment project subject to the R–3 ordinance provisions. Plaintiff, Richard Carlson, the beneficial owner of the property as well as a licensed

architect, specifically proposed to the court a plan to construct three detached structures containing a total of twenty-two units. The trial court rejected the plan on the grounds that three separate buildings on a single lot do not conform to the R–3 zoning requirements. However, the trial court entered a judgment order which would permit the plaintiff to construct a multiple-family project that would meet R–3 requirements. Plaintiffs-appellees contend the decree of the trial court should be affirmed since the decree is not too broad and that development pursuant to the decree in accordance with R–3 standards is a reasonable use for the property. Defendant-appellant contends that the decree should be reversed, since an order permitting the construction of any use within a particular classification is too broad and usurps the legislative function of zoning.

The issue here is how a decree in a zoning case is to be framed. While the courts possess the authority to pass upon the validity of a zoning ordinance, this authority does not include the power to determine the ultimate zoning classification. Reeve v. Village of Glenview, 29 Ill2d 611, 195 NE2d 188 (1963). Since the practical effect of declaring an existing zoning ordinance void in regard to a particular piece of property is to leave that piece of property in an unzoned condition, the court may frame its order in reference to a specific proposal before it and find that the contemplated use would be a reasonable one. Harshman v. City of DeKalb, 64 Ill App2d 347, 212 NE2d 146 (1965). Sinclair Pipe Line v. Village of Richton Park, 19 Ill2d 370, 167 NE2d 406 (1960). However, the court must exercise this authority with extreme care to avoid any encroachment into the legislative function of zoning. Harshman v. City of De Kalb, supra. The most that a court may do after declaring an existing zoning ordinance void as applied to certain property is to find from clear evidence before it that the specific use contemplated by the owner is reasonable and may be permitted. Fiore v. City of Highland Park, 76 Ill App2d 62, 76, 221 NE2d 323 (1966). Consequently, the decree of the trial court should be framed with reference to the evidence of the intended use and permit such use only, rather than being framed with ref-

erence to a multiple family zoning classification. Fiore v. City of Highland Park, supra.

■ Because Part B of the trial court's decree is framed with reference to a multiple-family zoning classification, the R–3 classification, rather than with reference to a specific use contemplated by the owner, we reject the plaintiffs' contention and reverse Part B of the trial court's decree. The trial court decree in effect rezoned the property with an R–3 classification. Evidence of the fact that the trial court decree, in effect, rezoned the property is provided by plaintiffs themselves. In their brief they contend that pursuant to the trial court's decree, their property is located on an R–3 section line street since prior to the decree the property was located on an R–1 section line street. Under the R–1 classification, plaintiffs were required to observe a density of 6,250 square feet of area per dwelling unit. Under an R–3 classification of property which is not on an R–3 section line street, plaintiffs would be required to observe a density of 2,500 square feet of area per dwelling unit. Plaintiffs contend that pursuant to the trial court's decree, they are required to observe a density of only 1,650 square feet of area per dwelling unit, the amount set by the Chicago Zoning Ordinance, Article 7, Section 7.5–3 for R–3 section line streets. Thus plaintiffs, by invoking the R–3 ordinance, pursuant to the trial court's decree, are seeking to transform an R–1 section line street to an R–3 section line street, and are attempting to jump from a density requirement of 6,250 square feet of area per dwelling unit to 1,650 square feet of area per dwelling unit, a density greater than that allowed the Olson, Hennessey, and Townsend properties. The fallacy in their theory is simply that the trial court can only approve a proposed reasonable use; it cannot rezone the property from R–1 to R–3 so as to allow plaintiffs to choose that use under the R–3 classification which is most preferable.

Plaintiffs rely heavily on Olson v. City of Chicago, 112 Ill App2d 147, 251 NE2d 318 (1969), which involved property at the northeast corner of 103rd Street and Prospect Avenue, the same intersection involved in the case at bar. That case is easily distinguishable since the

trial court in Olson framed its decree with reference to a specific use, namely, the construction of a four-unit townhouse, each unit to have two bedrooms. Plaintiffs attempt to distinguish Fiore v. City of Highland Park, supra, and Reeve v. Village of Glenview, supra, on the basis that a wide variety of different uses were possible under the classifications decreed by the respective trial courts in those cases that are not possible under the classification decreed by the trial court in this case. This contention is erroneous. In Fiore v. City of Highland Park, supra, a decree permitting "multiple-family dwellings under the classification 'F' of the Highland Park Zoning Ordinance," a classification very similar to Chicago's R-3, was held too broad. In Reeve v. Village of Glenview, supra, a business use classification was held too broad.

For these reasons, the judgment of the trial court is affirmed in part and reversed in part. That part of the decree of the trial court which declared the existing R-1 zoning void, as applied to the property in question, is affirmed; and that part of the decree which permitted the construction of multiple family apartments subject to the R-3 zoning provisions is reversed; and the cause is remanded to the trial court with directions to frame its decree pertaining to the use of the land in question with reference to the evidence of plaintiffs' contemplated use and to hear further evidence in this regard.

Affirmed in part and reversed in part and remanded with directions.

BURMAN, P. J. and MURPHY, J., concur.