(No. 52670.–)

NATIONAL BOULEVARD BANK OF CHICAGO *et al.*, Appellants, v. THE VILLAGE OF SCHAUMBURG, Appellee.

*Opinion filed December 1, 1980.—Rehearing denied January 29, 1981.*

Jay A. Canel and William J. Harte, of Chicago (Rudnick & Wolfe, of counsel), for appellants.

Jack M. Siegel, of Chicago, for appellee.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Plaintiff Eugene Matanky is the beneficial owner of property held in trust by plaintiff National Boulevard Bank of Chicago. Plaintiffs instituted this declaratory judgment action subsequent to a denial by defendant, the village of Schaumburg, of Matanky's request to rezone the subject property. The circuit court ruled that plaintiffs had overcome the presumption of validity of the village's zoning ordinance as applied to the subject property, and the court also found that plaintiffs' proposed use, a combination of multifamily and single-family uses, was reasonable. The appellate court reversed the judgment of the circuit court, ruling that plaintiffs had not met their burden of proof on the question of the reasonableness of the proposed use (76 Ill. App. 3d 388), and we allowed plaintiffs leave to appeal.

The subject property is a vacant 26.5-acre parcel located immediately south of Schaumburg Road and approximately 800 feet west of Roselle Road in the village of Schaumburg. The property is approximately 860 feet long at its northern and southern boundaries and 1,350 feet deep. Abutting the property on the south and west sides are single-family residential areas known as the Woods and Timbercrest subdivisions. These subdivisions contain residences with values ranging from $60,000 to in excess of $100,000. To the north of the property, across Schaumburg Road, is a housing project for the elderly. These buildings are set back 700 feet from Schaumburg Road and are partially screened by a grove of trees. Abutting the property to the east is an area zoned T-1 (Transitional District). This area contains the Town Square Shopping Center and substantial undeveloped land. South of this shopping center, separated from the subject prop-

erty by a school and park, are the Town Square Apartments. There are also multifamily developments in the general area of the subject property. One development, consisting of combined multifamily and single-family uses, provided a model for plaintiffs' alternate proposal which the circuit court found reasonable. The subject property was zoned R-1, permitting one single-family residence on every 2½ acres of land. The village agreed that the R-1 classification was an unreasonable use of the property. The remaining issue at trial was the reasonableness of plaintiffs' proposed use.

Plaintiffs had initially proposed to build 66 three-story buildings, each containing six units. The density of this proposed development was 14.9 units per acre. Plaintiffs submitted and rely upon an amended proposal, however, which includes 56 six-flat buildings and 20 single-family lots bordering the west and south perimeters of the property, that portion of the property which abuts the single-family subdivisions. Access to the multifamily units would be from Schaumburg Road, and landscaping and berming would be utilized to buffer the development from existing uses.

Plaintiff Matanky was the first witness to testify. In addition to matters not relevant to this appeal, plaintiff testified that he purchased the subject property for $500,000. He intended to sell each six-flat module for a price of $155,000 to $160,000, the price varying with locations. He further stated that there was an excellent market for single-family homes and that Schaumburg had been a very good suburb for both single-family and multifamily developments.

Thomas Buckley, a city planner, was the next witness called by plaintiffs. It was his opinion that the highest and best use of the property was multifamily development. Buckley had examined the plans proposed for plaintiffs' development and was of the opinion that these plans came

within his definition of the highest and best use. It was his opinion that the proposed use would not depreciate the surrounding uses. Buckley testified that the subject property was physically adaptable to single-family development and that the most predominant use in the area, without regard to the subject property, is single-family development.

Plaintiffs' architect, Stuart Wexler, testified that the site could feasibly be developed with single-family residences or townhouses, but these uses would not provide plaintiffs as high a return on their investment.

Paul Box, a traffic engineer, and Carl Kupfer, a civil engineer, were also called by plaintiffs. Box testified that present conditions on Schaumburg Road were inadequate to handle the 2,800 trips a day that would result under plaintiffs' proposed development. He was of the opinion, however, that this traffic problem would be alleviated by a pending county proposal to widen Schaumburg Road. Kupfer testified that the available utilities would be adequate to serve the proposed use, single-family development, or townhouse development.

William McCann, a real estate appraiser, testified on behalf of plaintiffs that, under the R-1 zoning classification, the property had a value of $250,000. He stated that if plaintiffs' initial proposed use were allowed, the property would have a value of $1,267,000 and, under the amended proposal now relied upon, the property would have a value of $1,235,000. He stated that if the property were developed as a single-family subdivision on lots the size of the abutting developments, the value of the subject property would be $665,000. He further testified that the site was suitable for townhouse development and single-family development and that there was a need and demand for single-family homes and an excellent market for townhouses in Schaumburg.

Defendant called as its first witness William Lawrence,

a city planner. It was Lawrence's opinion that either of the proposed uses would have an adverse effect upon the adjoining single-family developments. He testified that, in his opinion, the highest and best use of the property would be a moderate-density development of five to six dwelling units per acre, consisting of single-family units along the abutting developments and townhouses in the remaining area. It was his opinion that there was a greater demand for single-family development in the area and that the subject property takes its character from the subdivisions to the south and to the west, discounting the effect of the Town Square Shopping Center and Apartments and other multifamily developments in the general vicinity of the property. Lawrence further testified that the property was suitable for single-family development if properly screened from the shopping center, and he believed the property would accommodate 80 homes.

The director of village planning, Allan Saunders, was also called by defendant. He testified that it was his opinion that the highest and best use of the property would be single-family development, which could be accomplished with screening from the shopping center. He believed that plaintiffs' plan was incompatible with the adjacent subdivisions, that the proposed use would create traffic problems, and that high-density developments in the village should be located near Woodfield Mall, a major shopping center. On cross-examination, he conceded that there were areas in the village where single-family developments adjoined multifamily developments.

Joseph Zgonina, the village engineer, testified that plaintiffs' proposed use would generate 2,400 to 2,500 automobile trips per day, while the low-density use suggested by the village planning expert would generate 1,000 trips per day. He objected to the internal circulation system of the modified proposal as well as the original proposed use. He stated that, from a traffic-safety stand-

point, there would be points of conflict within the development where vehicles would be attempting to enter and exit parking spaces and enter and exit the development.

Albert Gundelach, a real estate appraiser, testified on behalf of defendant that, in his opinion, the highest and best use of the subject property would be single-family residential at 10,000-square-feet-per-lot density. He stated that there was an extremely strong demand for single-family homes and that approximately 80 homes could be placed on the subject property. He estimated the value of the property for single-family use to be $720,000, while the value under plaintiffs' proposed use would be $1,000,000. He further testified that the proposed development would have a depreciatory effect on the adjacent subdivisions, estimating that depreciation would be five to six percent for the homes nearest the perimeter.

Four homeowners from an adjacent subdivision objected to plaintiffs' proposal. It was their opinion that the proposed use would have an adverse impact on their property values, would not be aesthetically appealing, and would increase traffic congestion. Several of these homeowners, including two who had relied upon the zoning prior to purchase, stated they would not have purchased in the area if the proposed development had existed.

The trial court found, and defendant agreed, that the R-1 zoning classification is arbitrary, unreasonable and oppressive as applied to the subject property, and that it is not reasonably related to the public health, safety and morals of the community. The trial court then ruled that plaintiffs had met their burden of proving that the proposed alternate use was reasonable, finding that traffic conditions would be alleviated by a proposed widening of the road and further finding that the adjacent single-family residences would not depreciate in value if the property were developed with a buffer of single-family

homes. The appellate court, after consideration of the evidence, ruled that plaintiffs had not met their burden of proving by clear and convincing evidence that the zoning ordinance was, as to plaintiffs, arbitrary and unreasonable and without substantial relation to public health, safety, morals or welfare. For reasons which follow, we affirm the judgment of the appellate court.

Plaintiffs argue, relying principally upon the decision of this court in *Bauske v. City of Des Plaines* (1957), 13 Ill. 2d 169, that the appellate court usurped the function of the trial court and reevaluated the credibility of the witnesses. In addition, plaintiffs argue that the effect of the appellate court decision is to require plaintiffs to prove that the intermediate zoning uses between R-1 and the proposed use are unreasonable, contrary to *Aurora National Bank v. City of Aurora* (1976), 41 Ill. App. 3d 239.

As noted by the appellate court, in the usual zoning case a plaintiff property owner is required to show by clear and convincing evidence that the existing classification is invalid and that the use proposed is reasonable. In the present case, where the municipality admits the inappropriateness of the existing classification, plaintiffs must still show by clear and convincing evidence the invalidity of the ordinance insofar as it prohibits the use proposed. The question to be resolved is whether the municipality's denial of rezoning to permit the proposed development is reasonably related to the health, safety, morals and welfare of the community.

We agree with the appellate court that the evidence presented in the case creates, at best, a legitimate difference of opinion as to the reasonableness of prohibiting the proposed use. Although the witnesses of the parties were in disagreement over the highest and best use of the property, all agreed that the property was suitable for single-family development. Plaintiffs' expert witness,

Thomas Buckley, testified that the predominant use in the area is single-family development. Plaintiff Matanky himself testified that there was a demand for single-family development in the area, and all witnesses agreed that the property could be economically developed as a single-family development. Plaintiffs do not contend, nor could they, that the village cannot reasonably restrict the population density as necessary to protect the public welfare. We therefore hold that the denial of plaintiffs' request to rezone the property was reasonably related to the protection of the public health, safety, morals and welfare of the community, and that plaintiffs have not demonstrated by clear and convincing evidence that the proposed use was reasonable.

Nor do we agree that the opinion of the appellate court is in conflict with *Aurora National Bank v. City of Aurora* (1976), 41 Ill. App. 3d 239. Although testimony by the witnesses for the municipality may indicate that the proper classification of plaintiffs' property is R-6, this question was not the issue presented to the court. As was stated in *Schultz v. Village of Lisle* (1972), 53 Ill. 2d 39, 42, in addressing a similar contention:

"The question which was presented to the trial court and which is before this court is the reasonableness of permitting the requested use of plaintiffs' property. In testing the validity of the zoning ordinance in this case we are only concerned with the validity of the ordinance insofar as it prohibits this proposed use. The general rules, of course, apply, in that the person attacking the ordinance must prove by clear and convincing evidence that the zoning ordinance is, as to him, arbitrary and unreasonable and without substantial relation to public health, safety, morals, or welfare. [Citations.]"

We do not believe that this burden has been met.

For the reasons stated, we affirm the judgment of the appellate court.

*Judgment affirmed.*