TEXACO, INC., Plaintiff-Appellant and Cross-Appellee, v. THE VILLAGE OF SCHAUMBURG, Defendant-Appellee and Cross-Appellant.

First District (1st Division) No. 84—1940

Opinion filed August 19, 1985.

CAMPBELL, J., dissenting.

Don E. Glickman and Thomas F. Geselbracht, both of Rudnick & Wolfe, of Chicago, for appellant.

Jack M. Siegel, of Chicago, for appellee.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

Plaintiff, Texaco, Inc., filed a complaint seeking a declaration that the defendant village of Schaumburg's zoning ordinance was unconstitutional and void to the extent it prohibited redevelopment of plaintiff's property, currently used as a gasoline station, as a combination gasoline station, food-mart and car wash. Following a bench trial, the trial court ruled that the zoning ordinance was unconstitutional and void with respect to part of plaintiff's proposed plan, but not with respect to the remainder. Plaintiff appeals and defendant cross-appeals. We reverse and remand.

The subject property is a 35,000 square foot rectangular parcel located on the northeast corner of Schaumburg and Springinsguth roads in Schaumburg. Abutting the subject property to the north and east are single-family homes. On the northwest corner of Schaumburg and Springinsguth roads is a church, on the southwest corner is a single-family home and on the southeast corner is a drive-in banking facility.

In 1968, plaintiff was granted a special use permit to build the existing gasoline station on the subject property, which is zoned B-2 commercial. The gasoline station was designed for a maximum of approximately 41,000 gallons of gasoline per month and consisted of six pumps on two fuel islands. The station originally had two bays for service work on vehicles. In 1982, however, the bays were closed and replaced with vending machines.

Plaintiff contends that by 1983 retail fuel sales at the station had increased five-fold to approximately 250,000 gallons per month, thereby resulting in a capacity problem at the site. Due to the layout of the obsolete facility, the increased traffic was causing confusion and creating a safety hazard. Consequently, in 1983, plaintiff proposed razing the existing facility and replacing it with a Texaco System 2000 Station, plaintiff's standard design, which features three components: self-service fuel pumps, a food-mart for the sale of convenience items and an automatic car wash. The proposed plan provided for the installation of 16 fuel pumps with 24 nozzles on three islands oriented in a north-south direction, with a 528 square foot building in the middle island that would house the mini-mart. To the north of the pump islands, a car-wash building of approximately 1,000 square feet would be built.

Plaintiff anticipated that the car wash would increase fuel sales at

the site by 50,000 gallons per month. The increase would result from larger average purchases, since the car wash would be free with a "fill-up." Plaintiff's experience at its other System 2000 Stations was that the average sale, with the installation of a car wash, rose from 8 to 10 gallons.

In April 1983, plaintiff applied for an amendment to its special use permit to allow the redevelopment of the subject property in accordance with its proposed site plan. Although approval of the application was recommended by defendant's staff and zoning board of appeals, the application was denied by defendant's board of trustees. Plaintiff thereafter filed a complaint in the circuit court seeking a declaration that the present zoning as applied to its property is unreasonable, null and void, and that its proposed use for the property is reasonable.

The matter proceeded to trial, at which time both sides presented expert testimony regarding the impact of plaintiff's proposed plan on the surrounding area. Additionally, two property owners testified for the village. At the close of all the evidence, the trial court found that defendant's action in denying a special use permit for the gasoline station and food-mart was arbitrary, capricious and unreasonable, but found the village's action in denying a special-use permit for the car wash to be reasonable. The court did not review the evidence with respect to the component parts of the proposed plan separately, but indicated that traffic was the major concern. The judge's only comment regarding the car wash was that he thought it "eminently sensible" to construct two of the three requested uses, and then wait to determine their impact before constructing the car wash.

On appeal, plaintiff initially argues that the trial court erred in approving only a portion of its plan and rejecting the remainder, thereby failing to treat its proposal as a single integrated plan. We agree. A zoning ordinance may be set aside only to the extent necessary to permit the *specific use* proposed by a property owner. (*Schultz v. Village of Lisle* (1972), 53 Ill. 2d 39, 289 N.E.2d 614.) The specific use proposed must be introduced into evidence, and the court's decree must be framed with reference to the specific plan proposed. (*Sinclair Pipe Line Co. v. Village of Richton Park* (1960), 19 Ill. 2d 370, 167 N.E.2d 406; *Harshman v. City of DeKalb* (1965), 64 Ill. App. 2d 347, 212 N.E.2d 146.) The purpose of the rule is to bind both the land owner and the municipality to the adjudication of one specific use, and to prevent the multiplicity of litigation. *Sinclair Pipe Line Co. v. Village of Richton Park* (1960), 19 Ill. 2d 370, 167 N.E.2d 406.

Most recently, in *Norwood Builders v. City of Des Plaines* (1984),

128 Ill. App. 3d 908, 471 N.E.2d 634, this court held that the lower court erred in approving only a part of a proposed plan. There, a development proposal featured commercial uses, multifamily residences and light industrial and office uses on a 38-acre tract of land. The trial court held that the existing zoning was unreasonable, and that the commercial use, but not the remainder of the plan, could be built. On appeal, this court reversed the trial court, stating, "[W]e find that the trial court erred in approving 2.2 acres for commercial use and rejecting the remainder, because a court may only frame its decree upon plaintiffs' plan *as a whole.*" (Emphasis added.) 128 Ill. App. 3d 908, 928.

Defendant, without citing any authority, argues that the court had the authority to approve only part of plaintiff's proposal. At oral argument before this court, defendant asserted that plaintiff had actually sought three separate special-use permits which the trial court could address individually. After examining the record before us, we find no support for such an assertion. We note that defendant's own memoranda of law and briefs speak in terms of a single amended special-use permit. It is apparent from the evidence that only one integrated site plan was at issue in this case. Plaintiff did not seek separate approval of the components of its redevelopment by proposing alternate plans, as it might have done. *Cf. National Boulevard Bank v. Village of Schaumburg* (1979), 76 Ill. App. 3d 388, 394 N.E.2d 1320, *aff'd* (1980), 83 Ill. 2d 228, 415 N.E.2d 333.

It was not the function of the trial court to fashion its own development plan from the evidence presented. In light of the authorities cited above, we reverse the judgment of the trial court and remand the cause for proper findings based upon plaintiff's plan as a whole. The court on remand is directed to either accept or reject plaintiff's entire site proposal.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the cause remanded for further proceedings.

Reversed and remanded.

O'CONNOR, J., concurs.

JUSTICE CAMPBELL, dissenting:
The main question presented for decision by the majority opinion in this zoning case is whether the trial court erred by failing to treat Texaco's proposal to modernize as a single, integrated plan, and by

approving part, and not all of the proposed plan.

Texaco's complaint for a declaratory judgment was filed on August 9, 1983. The record discloses that the property was first acquired in 1968 and a special-use permit was granted for the specific service station now located on the site. When the station was built in 1968, it was a two-bay service station, with six gasoline pumps out in front designed to market 41,000 gallons per month. The bays were discontinued in 1982 and at the present time, at this location, there are only vending machines. The station is now pumping 250,000 gallons per month. One of Texaco's witnesses, its real estate agent, testified that the design capacity of the proposed plan with 16 gasoline pumps was capable of a volume of 400,000 gallons per month, and the items sold in the retail food mart would be milk, pop, cigarettes, candy and impulse items that people purchase when they pay for their gas. The car wash would be open from 6 a.m. to 10 p.m. daily, and the other parts of the facility would be open 24 hours a day. The projection for business was about 250 car washes per day, depending on weather conditions.

The matter proceeded to trial on plaintiff's amended complaint, the answer of the defendant having been filed, and the issues framed by the pleadings. At the close of all the evidence, the trial court rendered an opinion and found that the village's action in denying a special-use permit to the gas pumps and mini-retail mart was arbitrary and unreasonable, but found the village's action in denying a special-use permit for the car wash to be reasonable. Texaco filed its notice of appeal, and the village filed its notice of cross-appeal.

The first issue raised on appeal by Texaco was the assertion that the trial court erred by approving only the special-use permit only as to the additional gas pumps and mini-mart and rejecting the car wash. Texaco argues that it was not the trial court's function to fashion its own development plan from the evidence presented. Instead, "the court's decree had to be substantially in accordance with the specific integrated plan proposed."

Plaintiff has cited several cases in support of its position, that the trial court breached a supposed settled rule in reviewing its plan. *Schultz v. Village of Lisle* (1972), 53 Ill. 2d 39, 289 N.E.2d 614; *Sinclair Pipe Line Co. v. Village of Richton Park* (1960), 19 Ill. 2d 370, 167 N.E.2d 406; *Illinois National Bank & Trust Co. v. County of Winnebago* (1960), 19 Ill. 2d 487, 167 N.E.2d 401; *Norwood Builders v. City of Des Plaines* (1984), 128 Ill. App. 3d 908, 471 N.E.2d 634; *National Boulevard Bank v. Village of Schaumburg* (1979), 76 Ill. App. 3d 388, 394 N.E.2d 1320; *La Salle National Bank v. City of*

*Chicago* (1970), 130 Ill. App. 2d 457, 264 N.E.2d 799; and *Harshman v. City of DeKalb* (1965), 64 Ill. App. 2d 347, 212 N.E.2d 146.

A reading of the relevant portions of the above cases fails to support the position of Texaco with the exception of *Norwood*. Nothing in the facts or in the language of these cases suggests that the trial court was obliged to consider any and all zoning proposals as Texaco suggests.

The village argues that Texaco has requested three special uses for the expansion of the existing gas station, from 6 to 16 pumps, the establishment of a mini-mart and the installation of a car wash. Each use is an individual special use under the B-2 commercial classification. The trial court was within its rights to determine that the denial of one specific special use was proper even though the denial of the other two were unreasonable. The village, in its cross-appeal, insists that the trial court erred insofar as it permitted any of the requested special uses.

"Zoning ordinances, which must bear a reasonable relation to the public health, safety and welfare, are presumed valid. The party challenging the zoning bears the burden of proving by clear and convincing evidence [citations] that application of the ordinance to his property is unreasonable and arbitrary and bears no substantial relation to public health, safety, morals, or welfare. [Citations.] A party seeking a special-use permit bears a similar burden." *Cosmopolitan National Bank v. County of Cook* (1984), 103 Ill. 2d 302, 310-11, 469 N.E.2d 183, 187.

When the trial court considered the evidence relating to the proposed plan, it was guided by the standards set forth in *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 145 N.E.2d 65. Nowhere in this record does Texaco refer to any specific allegations in its pleadings, or in any evidence presented, or in its argument that the trial court was apprised of any preferred adjudication or was requested to treat the proposed plan as an "all or nothing plan." In my view it is not proper to place this burden on the defendant.

To suggest, perhaps for the first time on appeal, that the mini-mart, the car wash, and the gas pumps should be considered as a single integrated plan may have been waived by plaintiff. Moreover, it appears that there may be three separate uses as argued by defendant that would function in a different manner and are integrated only in an economic sense.

Whether the trial court must treat each special-use case as plaintiff urges must depend on the facts of each case. In *Schultz v. Village of Lisle* (1972), 53 Ill. 2d 39, 289 N.E.2d 614, a gasoline service sta-

tion case, the court, in rejecting such proposed use, stated that "[s]haping the order of the court to the facts of the particular case ***, we hold that the prohibiting of the use of plaintiffs' property for a gasoline service station is reasonably related to the public health, safety, morals, and welfare of the community." (53 Ill. 2d 39, 43, 289 N.E.2d 616, 617.) In *Norwood Builders v. City of Des Plaines* (1984), 128 Ill. App. 3d 908, 471 N.E.2d 634, the property involved the application for rezoning of plaintiffs' 38-acre tract of land to permit 2.2 acres for commercial use, 16.1 acres for multifamily residential use and 19.7 for light industrial use and office use. The court held that "the trial court erred in approving 2.2 acres for commercial use and rejecting the remainder, because a court may only frame its decree upon plaintiffs' plan as a whole. (See *Sinclair Pipe Line Co. v. Village of Richton Park* (1960), 19 Ill. 2d 370, 167 N.E.2d 406.) We therefore find plaintiff's entire proposed use is both specific and reasonable." 128 Ill. App. 3d 908, 928-29, 471 N.E.2d 634, 637.

In my view *Norwood* may be factually distinguished from the case at bar. In *Norwood*, plaintiffs sought to divide a 38-acre tract of land to permit commercial use, multifamily residential use and light industrial and office use. Plaintiffs appealed that portion of the trial court's decision which found plaintiffs proposed residential and light industrial use unreasonable. The city cross-appealed that portion of the judgment which declared the R-2 single-family designation of the subject property invalid. There was evidence in the record, and on appeal, that the reviewing court held, based upon the *La Salle* factors, that the findings of the trial court were against the manifest weight of the evidence. In approving the proposed plan, the court may have been justified in concluding that the three factors of the plan were so interdependent and interrelated that it would have been inappropriate to deal with each in a separate manner. Where the specific uses entail a high degree of interrelationship and interdependence, there may not be a logical or viable method for accurately separating the different uses for approval or rejection in whole or in part. Our attention has not been called to any such evidence presented in this case.

In the instant case, there has been no finding by this court as to the *La Salle* factors or the manifest weight of the evidence by the trial court. The *Norwood* decision was decided after this appeal was filed, and it does not appear that the issue of an integrated plan was raised in the trial court or any evidentiary support introduced on this subject. Presumably, the trial court based its judgment on the evidence presented at trial and the arguments and theory of the case advanced at that time.

There should not be any presumption in favor of a single integrated plan under the facts of this case, and to subject the trial court to the "all or nothing" approach mandated by this opinion, given the wide variation in zoning plans, may entail a broader judgment than is required by the precise facts to which it is to be applied.

A proper analysis of a zoning proposal requires consideration of the nature of the plan and the facts in evidence, and the court should not be placed in a position of automatically approving or rejecting a plan or special use in its entirety. Even if I were to agree with this proposition in the abstract, I do not believe that under the facts and circumstances of this case it can be applied to justify the remand on this issue. As the supreme court indicated in *Schultz v. Village of Lisle* (1972), 53 Ill. 2d 39, 289 N.E.2d 614, the order of the court should be framed and shaped according to the facts and proofs in the particular case.

Under the facts in this case, I would proceed to a disposition on the merits and not remand on the issue of severability.