RICHARD SEILER *et al.*, Plaintiffs-Appellees and Cross-Appellants, v. THE CITY OF GRANITE CITY, Defendant-Appellant and Cross-Appellee.

Fifth District    No. 5—92—0398

Opinion filed December 30, 1993.

Edward C. Fitzhenry, Jr., Assistant City Attorney, of Granite City, for appellant.

No brief filed for appellees.

JUSTICE WELCH delivered the opinion of the court:

The plaintiffs, Richard Seiler, Fred and Muriel Fossieck, and Joseph and Mildred Bohnenstiehl (plaintiffs), own three residential lots in Granite City upon which single-family residences have been constructed. The plaintiffs petitioned the Granite City Planning and Zoning Commission (Zoning Commission) to have their properties rezoned from R-1 residential use (*e.g.*, single-family dwellings, parks, playgrounds, churches, and public schools) to C-5 commercial use (*e.g.*, auto sales, hotels, restaurants, retail stores, taverns, packaged liquors, and gas stations). A hearing was held before the Zoning Commission on November 8, 1990. On November 15, 1990, the Zoning Commission denied the plaintiffs' request. Shortly thereafter, the city council concurred with the Zoning Commission and refused to grant the requested zoning change.

On December 19, 1990, the plaintiffs filed in the circuit court of Madison County a complaint for declaratory judgment against the City of Granite City (City), seeking that: (1) the City's zoning ordinance, as applied, be declared "arbitrary, capricious, and unreasonable" and (2) the plaintiffs be allowed to use their properties consistent with the commercial uses permitted under a C-5 designation. The City filed its answer on March 28, 1991.

The case proceeded to trial on October 8, 1991, and October 15, 1991. On February 3, 1992, the circuit court entered an order in favor of the plaintiffs. The court found that the R-1 zoning classification, as applied to the plaintiffs' properties, was unconstitutional, and the court therefore ordered the City to redesignate the properties C-2 commercial (*e.g.*, video stores, day-care centers, florist shops, dry cleaning stores). The City filed a post-trial motion on February 18, 1992, arguing, *inter alia*, that the court had no authority to rezone the plaintiffs' properties C-2. On March 3, 1992,

the plaintiffs filed a post-trial motion asking the court to modify its order to allow them to use their properties "to the maximum [extent] allowed" under the City's zoning ordinance. On May 22, 1992, the court modified its order to allow the plaintiffs to use their property "for those commercial purposes authorized in a C-2 District."

The City now appeals. At issue in this case is whether a trial court can: (1) impose its own zoning classification upon a piece of property and (2) properly frame a binding decree in a zoning case where the plaintiffs fail to introduce evidence as to the specific uses they intend to make of their properties. We answer both questions in the negative and reverse.

Initially, the trial court ordered that the plaintiffs' properties be rezoned C-2. Recognizing that it lacked the authority to rezone the property outright (see *La Salle National Bank v. City of Chicago* (1970), 130 Ill. App. 2d 457, 264 N.E.2d 799), the court "modified" its order to permit the plaintiffs to use their properties "for those commercial purposes authorized in a C-2 District." The net result was to rezone the plaintiffs' properties C-2. A trial court cannot achieve through indirection what cannot be done directly, *i.e.*, rezone a parcel of property. There is no practical difference between ordering a city to rezone a parcel of property and ordering that a city allow a plaintiff to use his or her property for any use permitted under a given zoning classification.

The appellate court has previously had occasion to consider a trial court order similar to the one in the instant case. In *Suhadolnik v. City of Springfield* (1989), 184 Ill. App. 3d 155, 540 N.E.2d 895, the appellate court reviewed a trial court order that Suhadolnik, who desired to open a day-care facility in an area zoned R-3 (single-family residences and duplexes), "be allowed to develop [his property] in accordance with the R-5(b), General Residence and Office District, classification of the zoning ordinance of the City of Springfield." (*Suhadolnik*, 184 Ill. App. 3d at 178, 540 N.E.2d at 909.) The court in *Suhadolnik* held that the trial court "should not have rezoned the property, but leaving the zoning at R-3, allowed plaintiff, nevertheless, to proceed with the specific proposed use, or day-care center, only." *Suhadolnik*, 184 Ill. App. 3d at 179, 540 N.E.2d at 909.

Regardless of the language employed, a trial court cannot rezone property. In *La Salle National Bank*, the appellate court provided a cogent statement as to how a decree in a zoning case should be framed:

"While the courts possess the authority to pass upon the validity of a zoning ordinance, *this authority does not include the power to determine the ultimate zoning classification.* [Citation.] Since the practical effect of declaring an existing zoning ordinance void in regard to a particular piece of property is to leave that piece of property in an unzoned condition, the court may frame its order in reference to a *specific proposal* before it and find that the contemplated use would be a reasonable one. [Citations.] However, the court must exercise this authority with *extreme care* to avoid any encroachment into the legislative function of zoning. [Citation.] The most that a court may do after declaring an existing zoning ordinance void as applied to certain property is to find from clear evidence before it that the *specific use* contemplated by the owner is reasonable and may be permitted." (Emphasis added.) *La Salle National Bank*, 130 Ill. App. 2d at 460, 264 N.E.2d at 801.

Lastly, based on the record before this court, we note that the plaintiffs failed to introduce any evidence as to the proposed *specific uses* they intended for their properties. The following rule is well established: "A zoning ordinance may be set aside only to the extent necessary to permit the *specific use* proposed by a property owner. [Citation.] The specific use proposed must be introduced into evidence, and the court's decree must be framed with reference to the specific plan proposed." (Emphasis in original.) *Texaco, Inc. v. Village of Schaumburg* (1985), 135 Ill. App. 3d 1084, 1086, 482 N.E.2d 657, 659; see also *Sinclair Pipe Line Co. v. Village of Richton Park* (1960), 19 Ill. 2d 370, 378-79, 167 N.E.2d 406, 411; *Suhadolnik*, 184 Ill. App. 3d at 179, 540 N.E.2d at 909-10; *La Salle National Bank*, 130 Ill. App. 2d at 460-61, 264 N.E.2d at 801.

In each of the above-cited cases, there was a specific proposal before the respective courts. (See *Sinclair Pipe Line Co. v. Village of Richton Park* (1960), 19 Ill. 2d 370, 167 N.E.2d 406 (construction of three crude oil storage tanks); *Suhadolnik v. City of Springfield* (1989), 184 Ill. App. 3d 155, 540 N.E.2d 895 (day-care center); *Texaco, Inc. v. Village of Schaumburg* (1985), 135 Ill. App. 3d 1084, 482 N.E.2d 657 (replacement of existing gas station with a larger facility that included a minimart and a car wash); *La Salle National Bank v. City of Chicago* (1970), 130 Ill. App. 2d 457, 264 N.E.2d 799 (construction of three detached multifamily buildings totaling 22 units).) In the instant case, there was no evidence as to what com-

214

mercial uses the plaintiffs intended to put their properties. Without such evidence, a trial court cannot properly frame a binding decree.

For the foregoing reasons, we reverse the judgment of the trial court.

Reversed.

GOLDENHERSH and RARICK, JJ., concur.