(No. 53340.—

ROBERT A. KOSS *et al.*, Appellants, v. THE CITY OF WAUKEGAN, Appellee.

*Opinion filed March 18, 1981.*

MORAN, J., took no part.

Morrison & Nemanich, of Waukegan (Willian J. Nemanich, of counsel), for appellants.

Diver, Bollman, Grach & Quade, of Waukegan (Robert M. Bollman and Bernadette Cole, of counsel), for appellee.

MR. CHIEF JUSTICE GOLDENHERSH delivered the opinion of the court:

Defendant, the city of Waukegan, appealed from the judgment of the circuit court of Lake County entered in favor of plaintiffs, Robert A. Koss, Douglas R. Koss, and the Waukegan Savings and Loan Association, in their action for declaratory judgment. The circuit court found that defendant's zoning ordinance, as applied to plaintiffs' property, was unconstitutional and void and that a savings and loan facility could be constructed thereon in accord-

ance with the preliminary plan received in evidence. In a Rule 23 order (73 Ill. 2d R. 23) the appellate court reversed (80 Ill. App. 3d 1205), and we allowed plaintiffs' petition for leave to appeal (73 Ill. 2d R. 315).

The record shows that the property in question is situated in northwestern Waukegan, is triangular in shape and approximately one-half acre in size, and is bordered on the north by Buck Avenue, on the east by North Jackson Street, and on the southwest by Golf Road, with street frontage there of 296.2 feet.

The record further shows that in the area in question Golf Road is a major four-lane road which runs at a diagonal. Golf Road is traversed by 15,000 to 20,000 vehicles daily, and has been designated as a "local truck route," with a posted speed limit of 30 miles per hour. The testimony of plaintiffs' witnesses showed that the volume of traffic on Golf Road has increased in recent years, resulting at least in part from the designation of the road as a truck route and the movement of vehicular traffic between industrial areas near Lake Michigan on the east and major highways west of Waukegan. That portion of North Jackson Street which extends north from Golf Road is utilized for access to residences in that area. There is a traffic-control light at the corner of Golf Road and North Jackson Street.

The parcel in question was purchased by plaintiffs Koss approximately seven years earlier and was zoned R-3 (single-family residential, lot area not less than 6,200 feet) under defendant's then-existing zoning ordinance. Plaintiff Waukegan Savings and Loan Association contracted to purchase the property from the Kosses and proposed to erect a one-story savings and loan facility with 5,000 square feet of building area, and parking and drive-in facilities. The plaintiffs filed an application seeking a change of zoning classification from R-3 to B-1 (retail business district). The application was denied by defend-

ant, and the plaintiffs instituted the present action.

The record shows that the property to the north and east of the plaintiffs' lot is occupied by single-family residences and is so zoned. The property to the south is also occupied by single-family residences and is so zoned up to a point near Greenwood Avenue, where an area of B-3 (retail service business) zoning exists east to west from North to Western Avenues respectively. The property to the west of the parcel and east of Western Avenue is, with the exception of one B-3 and one R-5 (multifamily residential) parcel, also occupied by single-family residences and so zoned. The existing use and zoning of property on Golf Road, however, is not exclusively single-family residential in nature. A similar triangular tract immediately to the southwest across Golf Road from the Koss property is zoned B-3 and occupied by a Citgo service station. The property located immediately to the southeast of the Koss parcel on the north side of Golf Road is zoned R-4 (two-family residential) and was vacant at the time of trial. Apparently two residential buildings have now been erected on that site. A single-family residence, church and parking lot are located immediately south of Golf Road across from plaintiffs' property. A fire station is situated south of Golf Road and immediately east of the aforementioned church, on the southeast corner of Golf Road and North Jackson Street. Immediately to the west of plaintiffs' property and north of Golf Road is a one-block area zoned R-3 (single-family residential) and occupied by a three-unit apartment structure and a home. West of the home, across Linden Avenue, is a one-block area zoned R-5 (multifamily residential) and occupied, at least in part, by several large three-story apartment buildings adjacent to Golf Road.

Plaintiffs introduced into evidence a "preliminary concept plan" for the proposed savings and loan building. According to Peggy Gupton, a vice-president and director

of plaintiff Waukegan Savings and Loan, the structure would be approximately twice as large as an existing office in Waukegan and would serve as a full-service branch facility. The existing facility accommodated about 30 drive-in customers daily. Rolf C. Campbell, a city planning and zoning consultant who designed the plan, testified that the structure would be surrounded by landscaping or brick walls and would provide "a screen to the high intensity thoroughfare of Golf Road ***." The facility was designed to limit disrupting the flow of traffic on Golf Road by providing that traffic could only enter the facility from Golf Road if moving northwesterly. Traffic leaving the facility would not exit onto Golf Road but would exit only onto Buck Avenue or North Jackson Street, and proceed onto Golf Road via presently existing intersections. Twenty parking spaces and a "stacking" area for nine cars awaiting service at the drive-in facility would be provided. Campbell testified further that the facility, as designed, would be compatible with the existing family homes in the area. He was also of the opinion that the noise from the traffic made the lot unsuitable for residential development.

Plaintiff Robert A. Koss testified that since he and his brother had purchased the property approximately seven years earlier a number of changes had occurred in the neighborhood, primarily due to the increased traffic on Golf Road. Traffic had tripled in the seven-year period, and there was a substantial increase in truck and commercial traffic in general. The neighborhood is now extremely noisy both day and night. Traffic is especially heavy during a change of shifts at certain factories. In the seven-year period of their ownership, they have received no inquiries from potential purchasers who would use the property for residential purposes; only commercial uses have been proposed by buyers. There has been no residential building on Golf Road in the immediate area since

1971.

A builder and realtor who resided in Waukegan testified that he was formerly the president of a construction company which built more than 800 homes in Waukegan and in other areas in Lake County. He was familiar with the general demand for single-family residential building sites in the city and testified further that the parcel was not suitable for use as residential property in any manner. He stated that the principal problem was that the longest side of the lot fronted on Golf Road and the lot provided no privacy. Although homes which were built facing Golf Road were still occupied and well maintained, the owners were now unable to obtain the selling price requested, because of the heavy traffic. A real estate appraiser called by plaintiffs testified that the value of the property as presently zoned was $20,000, and as proposed to be used by plaintiff Waukegan Savings and Loan was worth $140,000. He saw no injury to adjoining residences, because the single-family homes facing the institution would view the walls and landscaping and not the parking lot or building.

Called on behalf of the defendant, a planning architect for the city testified that he was familiar with the parcel in question, that the best use for the property was the predominant use in the area, single-family residential, and that the proposed development would have an adverse impact upon traffic in the area. He further testified that the general range of setbacks in the area was 30 feet, while the setbacks proposed for this facility were approximately 10 to 15 feet. Further commercial development on Golf Road would exacerbate an already existing traffic problem and would present hazards for school children who cross at the intersection.

Peggy Gupton, called by defendant under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 60), testified that it was expected that the volume of

drive-in traffic would double at the new location and that more space was needed at the association's present facility. A real estate broker called by the city testified that the highest and best use of the property was R-3, single-family residential, "with some R-4 duplex." Joann Callahan, a Waukegan real estate broker, testified that the highest and best use for the property was for duplex housing requiring R-4 zoning.

In its order the appellate court noted:

"Plaintiffs' witnesses testified that the subject property was unsuitable for residential development because of its triangular shape, its natural orientation towards a high volume truck route, the high noise levels, and a total lack of privacy. These factors were not challenged by the city and, when considered together, clearly demonstrate the unsuitability of the parcel for any type of residential use."

The appellate court held that the circuit court had correctly determined that the zoning ordinance was unconstitutional as applied to the parcel in question. The appellate court, however, also concluded that plaintiffs' proposed use was unreasonable, stating:

"Here, the very evidence relied upon by plaintiffs to demonstrate the invalidity of the city zoning restrictions—*i.e.*, the high volume of car and truck traffic on Golf Road—also demonstrates the unreasonableness of the use proposed by plaintiffs for the property—a savings and loan association serving drive-in customers. According to the city's planning architect, a bank or savings and loan association is considered a 'high traffic generating use.' This testimony was not seriously controverted by plaintiffs. Rather, plaintiffs chose to show that the adverse effects of additional traffic attributable to the savings and loan association could be mini-

mized by controlled ingress and egress to the building. In our view, a use generating a high volume of automobile traffic in a residential area already burdened with heavy car, truck, and commercial traffic is clearly unreasonable. This is particularly true where the site for the proposed use is a comparatively small lot surrounded by streets on all sides.

We further note that while the evidence established the adequacy of on-site parking for present purposes, projections by one of plaintiffs' witnesses established the likelihood that available parking would eventually become insufficient. A vice-president for Waukegan Savings and Loan testified that the association estimated the number of necessary parking spaces by assuming these requirements would be roughly equivalent to its 10th Street facility. However, the witness frankly admitted that business was expected to at least double over the years and that more space was now needed at the 10th Street facility. In short, the undisputed evidence established that present parking requirements would be adequate while future requirements were not. In light of the inability of the association to expand because of the limited size of the Koss parcel, we believe that the use proposed by the plaintiffs is unreasonable under the circumstances presented in the case at bar and that the trial court's finding of reasonableness is clearly against the weight of the evidence."

Plaintiffs contend that the appellate court erred in holding that the circuit court's finding was against the manifest weight of the evidence. They argue that the decision of the appellate court based on the evidence that the proposed use will cause an increase in traffic on a heavily traveled road, and showing inadequate provision

for future parking requirements, conflicts with the decision in *La Salle National Bank v. Village of Skokie* (1962), 26 Ill. 2d 143. Further it is contended that the appellate court "decision leaves the property unzoned and permanently vacant" since the court affirmed a finding that the property is unsuitable for any type of residential use, but ruled "that the property cannot be utilized for its highest and best use."

Defendant argues that the facts of this case are similar to and controlled by *Schultz v. Village of Lisle* (1972), 53 Ill. 2d 39, and that "it would seem that the appellate court need not have determined that the Waukegan ordinance was unconstitutional." Further defendant contends that the residential character of the neighborhood makes the proposed commercial use unreasonable. Defendant also argues that the property is not unzoned and asks that judicial notice be taken of the enactment of an ordinance which rezones the property to "R-4A" and "would permit the erection of three duplexes" on the parcel. Defendant further notes that "In rezoning the property in question to multi-family use, the City conceded the fact that it is not appropriate for single-family residences."

We take judicial notice of the rezoning of the subject parcel to R-4A, which is a multifamily use under defendant's zoning ordinance. (Ill. Rev. Stat. 1979, ch. 51, par. 48b.) In view of the rezoning of the property to multi-family use, we need not consider whether the ordinance was valid as it affected plaintiffs' property. The sole question for determination is whether the plaintiffs proved by clear and convincing evidence that the use proposed for the property was reasonable. *National Boulevard Bank v. Village of Schaumburg* (1980), 83 Ill. 2d 228.

From our examination of the record we conclude that the evidence adduced by plaintiffs, at most, presented a difference of opinion as to the reasonableness of the proposed use and whether the denial of rezoning to permit the

proposed use is reasonably related to the health, safety, morals and welfare of the community. The appellate court did not err in holding that plaintiffs had failed to sustain their burden of proof and the judgment of the appellate court is affirmed.

*Judgment affirmed.*

MR. JUSTICE MORAN took no part in the consideration or decision of this case.