# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**People v. Orengo, 2012 IL App (1st) 111071**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CARLOS ORENGO, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-11-1071 |
| Filed<br>Rehearing denied | December 18, 2012<br>January 14, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from a finding of "not not guilty" at a discharge hearing following a finding that defendant was unfit to stand trial on charges of sexual offenses against a three-year-old child, the appellate court affirmed the trial court's judgment over defendant's contentions that the victim's outcry statements were improperly admitted under section 115-10 of the Code of Criminal Procedure and that without those statements there was no evidence that defendant committed the charged acts, since section 115-10 applies to discharge hearings and even without the testimony about the outcry statements, the evidence established beyond a reasonable doubt that defendant committed the acts. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 07-CR-13964; the Hon. Kenneth J. Wadas, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, and Robert Hirschhorn, all of State Appellate Defender's Office, of Chicago, for appellant. |
| --- | --- |
| | Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Tasha-Marie Kelly, and Koula A. Fournier, Assistant State's Attorneys, of counsel), for the People. |
| Panel | PRESIDING JUSTICE HARRIS delivered the judgment of the court, with opinion. Justices Quinn and Simon concurred in the judgment and opinion. |

**OPINION**

¶ 1    Defendant, Carlos Orengo, appeals the circuit court's determination that he is "not not guilty" on 31 counts of criminal sexual misconduct after a discharge hearing pursuant to section 104-25 of the Code of Criminal Procedure of 1963 (the Code) (725 ILCS 5/104-25 (West 2008)). On appeal, Orengo contends (1) the trial court erred in admitting outcry statements made by the three-year-old alleged victim, M.M., under section 115-10 of the Code (725 ILCS 5/115-10 (West 2008)) because that section does not apply to discharge hearings; and (2) without those statements, the evidence does not prove beyond a reasonable doubt that he committed the alleged acts. For the following reasons, we affirm.

¶ 2                          JURISDICTION

¶ 3    The trial court entered its finding of "not not guilty" on February 18, 2012, and a motion to reconsider was denied on March 30, 2012. Orengo filed a notice of appeal on April 11, 2012. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rules 301 and 303 governing appeals from final judgments entered below. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. May 30, 2008).[1]

¶ 4                          BACKGROUND

¶ 5    Orengo was charged with 31 counts of predatory criminal sexual assault, criminal sexual

---

[1]Orengo states that jurisdiction lies with this court pursuant to article VI, section 6, of the Illinois Constitution and Illinois Supreme Court Rules 603 and 606, governing appeals from a final judgment of conviction in a criminal case entered below. Ill. Const. 1970, art. VI, § 6; Ill. S. Ct. R. 603 (eff. Oct. 1, 2010); R. 606 (eff. Mar. 20, 2009). However, our supreme court has determined that since a section 104-25 discharge hearing is a civil proceeding, jurisdiction falls under the rules for civil appeals. *People v. Waid*, 221 Ill. 2d 464, 472 (2006).

assault, aggravated criminal sexual abuse and criminal sexual abuse. Dr. Fidel Echevarria, a psychiatrist from the forensic clinical services department, subsequently found Orengo unfit to stand trial due to cognitive and memory impairments. The trial court held a second fitness hearing in which Orengo was again found unfit to stand trial. Dr. Echevarria stated that Orengo suffered from "irreversible dementia which was the result of chronic alcohol use" and would not regain fitness in any reasonable period. The State sought a discharge hearing pursuant to section 104-25 of the Code.

¶ 6        In anticipation of the discharge hearing, the State moved for a hearing under section 115-10 to allow statements allegedly made by M.M. to Melissa Malave and Carey Kato at the time of the incident. The trial court conducted the section 115-10 hearings on March 10 and 26 of 2010. The court found both witnesses credible, and the evidence showed that "the child was not in any way coerced or suggested to her [*sic*] what to say or who to accuse." It granted the State's motion and allowed the witnesses to testify at the discharge hearing about the statements M.M. made to them.

¶ 7        Orengo filed a motion to suppress his statements, and the trial court conducted a hearing on May 18, 2010. Detective Jose Casteneda testified that he advised Orengo of his *Miranda* rights in English and Spanish, and Orengo acknowledged his rights and waived them. He further stated that Orengo appeared coherent and he found nothing unusual in Orengo's physical or mental condition. Orengo subsequently implicated himself in a statement to Detective Casteneda. Orengo also agreed to speak with Assistant State's Attorney (ASA) Elizabeth Ciaccia. ASA Ciaccia testified that she gave Orengo his *Miranda* rights and he was cooperative and appeared healthy. Orengo implicated himself in a handwritten statement.

¶ 8        For the defense, Dr. Echevarria testified that he reviewed psychiatric reports dated July 7, 2007, which was about a month after Orengo's arrest. The reports stated that Orengo was acting inappropriately and incoherently and suffered from memory deficits consistent with dementia. Dr. Echevarria also relied on an evaluation from July 2008. He acknowledged that he did not interview Detective Casteneda or ASA Ciaccia, both of whom spoke with Orengo on the night of his arrest.

¶ 9        The trial court denied Orengo's motion, finding that on the night of his arrest Orengo understood his *Miranda* rights. It also found Detective Casteneda and ASA Ciaccia "highly credible" witnesses and noted that Dr. Echevarria should have interviewed them since they were present on the night Orengo gave his statements.

¶ 10       The trial court held the discharge hearing on December 9, 2010. M.M. testified that at the time of the hearing she was nine years old and in fourth grade. When she was three, her grandmother, Carmen M., sometimes babysat her and Orengo would be at Carmen's house. M.M. stated that one time when she was at Carmen's, she was alone with Orengo. She was watching cartoons in the living room. Orengo pointed at his "private area" and M.M. said "no." Orengo then took M.M. into the bedroom and put her on the bed. He tried to pull down her clothes and M.M. tried to hold them up. Orengo did not take off his underwear but he started to "hump" her by going side to side with his "private." M.M. stated that his "private" touched her underwear. M.M. heard footsteps and Orengo told her to pull up her pants. Orengo started to pull up his pants and then M.M. saw her grandmother. She did not

remember if she said anything to her. M.M. also remembered that Melissa Malave came to pick her up and they went to the hospital. M.M. admitted that she did not remember going to the hospital or speaking to police. She also acknowledged that when she was six years old she told the police that she did not remember Orengo. She stated that she has not spoken with Melissa about the incident since the day it happened.

¶ 11    Carmen M. testified that M.M. was the daughter of her son, Domingo. In August 2004, M.M. was three years old. On August 21, 2004, Domingo's girlfriend, Melissa Malave, dropped M.M. off at Carmen's apartment so she could babysit while they worked. At the time, Carmen was seeing Orengo and he lived with her in the apartment. She had never had any problems with him prior to that day. After giving M.M. a bath, Carmen left the apartment for 10 to 15 minutes to buy some juice. M.M. was with Orengo watching cartoons in the living room. When Carmen returned from the store, she called out to M.M. and Orengo but received no response. She went to the bedroom and found Orengo with his underwear down to his knees. Carmen also saw M.M. with her pants and underwear around her ankles. Orengo started pulling up his underwear and Carmen asked him "what's going on here." She then slapped him and kicked him out of the apartment. Carmen checked M.M. and found red marks around her private area.

¶ 12    Carmen did not call the police right away because she did not know what to do. When Melissa returned that evening she told her what happened and Melissa called the police. Carmen stated that M.M. called her vagina either "tooty" or "chi-chi." She acknowledged on cross-examination that she never actually saw Orengo touching M.M.

¶ 13    Melissa Malave's testimony at the hearing was consistent with her testimony during the section 115-10 hearing. She stated that at the time of the incident, August 21, 2004, she was dating M.M.'s father. On that day, she dropped M.M. off at Carmen's house so Carmen could babysit. When she returned for M.M. around 8:40 p.m., she notified police and M.M. was taken to the hospital. While in the examination room, Melissa asked M.M. what had happened. M.M. told her that "he had put on my chi-chi and it was itchy and hairy." M.M. also told her that Orengo "licked her chi-chi and her butt" and she had "sucked his dick." Melissa stated that she did not say anything to prompt M.M. in her response and that M.M. "just blurted it out" during their conversation.

¶ 14    Although the incident occurred in 2004, Orengo was not taken into custody by police until June of 2007. Detective Mark DiMeo testified that he and his partner, Detective Castaneda, met with Orengo on June 25, 2007. He identified a copy of Orengo's statement to ASA Ciaccia, which he gave in Detective DiMeo's presence. In the statement, Orengo stated that on August 21, 2004, he lived with his girlfriend, Carmen M. That day, Carmen left him alone with M.M. while she went to the store. He stated that M.M. was four years old at the time. When Carmen left, M.M. exited the shower unclothed and approached Orengo. M.M. unbuttoned his pants and pulled down his pants and underwear. She touched his penis with her hands and they went on the bed. M.M. climbed on top of him and put her vagina on top of his penis, rubbing against him. Orengo stated that M.M. then took his hand and placed them on her vagina and breasts. His fingers went inside her vagina and his mouth touched M.M.'s vagina and buttock. Orengo stated that M.M. sucked his penis. He heard Carmen return and rushed to put on his pants. When she came into the room, she saw that he was not

-4-

wearing pants and M.M. was naked. Orengo stated that Carmen hit him across the face and kicked him out of the house. Orengo also apologized and asked for help so this incident would not happen again.

¶ 15        The parties stipulated to the testimony of Carey Kato through a transcript containing her testimony at the section 115-10 hearing. At the hearing, Kato testified that she was a forensic interviewer on September 2, 2004, and she conducted a victim-sensitive interview with M.M. M.M. was three years old at the time. She told M.M. it was important to talk only about things that are real, and she asked her if someone said it was raining in the room would that be real or not real. M.M. answered that it would not be real because it is not raining in the room. Kato then asked if someone said M.M. is a girl would that be real or not real, and M.M. responded that it was real because she is a girl. Kato testified that M.M. responded "very well" for a three-year-old.

¶ 16        Kato then had M.M. identify parts of the body. M.M. referred to her vaginal area as "chee-chee" and she called her bottom her "butt." Kato asked M.M. if she knew the difference between a good touch and a bad touch. M.M. answered that a good touch is a hug and a bad touch is if someone hits you. She also stated that it is bad if someone touches her "chee-chee." M.M. then told her that Orengo touched her "chee-chee" and that they had their clothes off and Orengo took off his underwear. M.M. said that his "dick" went inside her "chee-chee" and in her mouth. Orengo's tongue also touched her "chee-chee."

¶ 17        The parties also stipulated that Orengo was over 17 years of age at the time of the offense and M.M.'s birth certificate was presented to prove her date of birth.

¶ 18        The defense presented two stipulations but no witnesses. The parties first stipulated that if Detective Castaneda and ASA Ciaccia testified at trial, they would state that when asked on June 26, 2007, about the assault M.M. could not recall the incident. The second stipulation stated that when Detective Castaneda interviewed Orengo on June 26, 2007, he indicated that the sexual assault occurred three years earlier and at the time M.M. was seven years old.

¶ 19        The trial court found the witnesses credible and rejected the idea that M.M. was "coached" on the details of the incident. It believed that "[w]hatever she said actually did happen. And that's corroborated by the defendant's freely and voluntarily given confession to the Assistant State's Attorney Ciaccia." Accordingly, the trial court found Orengo "not not guilty" on all counts and ordered that he be held in the Department of Health Services for two years. Orengo filed a motion for a new discharge hearing which the trial court denied. Orengo filed this timely appeal.

¶ 20                                              ANALYSIS

¶ 21        Orengo contends that the trial court erred in admitting Malave's and Kato's testimony recounting M.M.'s statements about the incident. The State contends that Orengo has waived this issue on appeal because defense counsel stipulated to Kato's testimony at the hearing and did not include the specific issue in the motion for a new hearing. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). The record shows that defense counsel raised no objection when the State moved for a section 115-10 proceeding on the testimony in anticipation of the discharge

hearing. Furthermore, counsel did not object at the section 115-10 proceeding or at the discharge hearing when the testimony was presented. We find that Orengo has waived review of this issue. However, since the waiver rule "is a limitation on the parties and not the jurisdiction of the courts," we can choose to address the issue. *Committee for Educational Rights v. Edgar*, 174 Ill. 2d 1, 11 (1996). Upon consideration of its merits, we are not persuaded by Orengo's argument.

¶ 22    The trial court allowed the testimony pursuant to section 115-10 of the Code. Orengo argues that section 115-10 applies only to criminal prosecutions and the testimony in question was presented at his discharge hearing, a civil proceeding.[2] This issue concerns the interpretation of a statute. In construing a statute, the court's primary objective is to give effect to the legislature's intent. *People v. Tidwell*, 236 Ill. 2d 150, 156 (2010). Statutory language is the best indicator of legislative intent and must be given its plain and ordinary meaning. *Id.* An issue of statutory interpretation is reviewed *de novo*. *People v. Davison*, 233 Ill. 2d 30, 40 (2009).

¶ 23    Section 115-10 (a) provides:

"In a prosecution for a physical or sexual act perpetrated upon or against a child under the age of 13, *** the following evidence shall be admitted as an exception to the hearsay rule:

        (1) testimony by the victim of an out of court statement made by the victim that he or she complained of such act to another; and

        (2) testimony of an out of court statement made by the victim describing any complaint of such act or matter or detail pertaining to any act which is an element of an offense which is the subject of a prosecution for a sexual or physical act against that victim." 725 ILCS 5/115-10(a)(1), (2) (West 2008).

Orengo argues that the term "prosecution" implies a criminal trial. He concludes that the plain language of section 115-10 makes it applicable only to testimony presented in a criminal proceeding.

¶ 24    Orengo is correct in stating that a discharge hearing pursuant to section 104-25 is not a criminal prosecution. See *People v. Waid*, 221 Ill. 2d 464, 470 (2006). Instead, a discharge hearing is a civil, "innocence only" proceeding to determine whether to acquit a defendant of the charges when there is a finding of unfitness. (Internal quotation marks omitted.) *Id.* at 472. If the evidence presented at the discharge hearing is sufficient to establish defendant's guilt, he is found "not not guilty." (Emphasis omitted.) *Id.* at 478. The issue of guilt is "deferred until the defendant is fit to stand trial." *People v. Rink*, 97 Ill. 2d 533, 543 (1983).

¶ 25    Although a defendant may not be convicted at the conclusion of a discharge hearing, the purpose of the hearing is the same as that of a criminal trial: "to test the sufficiency of the State's evidence of his guilt of the charged crime." *In re Nau*, 153 Ill. 2d 406, 410 (1992).

---

[2]We note that Orengo does not challenge the trial court's finding that the testimony was sufficiently reliable under section 115-10. His sole contention on appeal is that section 115-10 does not apply in a discharge hearing.

As the supreme court stated in *Nau*, in a discharge hearing "[t]he State and the defendant are permitted to introduce evidence relevant to the defendant's guilt. If the evidence does not prove the defendant's guilt beyond a reasonable doubt, the court must enter a judgment of acquittal. *** If the hearing does not result in acquittal, the defendant may be remanded for further treatment, but a conviction may not be entered." *Id.* at 410-11. Although the court's judgment after a discharge hearing is not "a technical determination of guilt, the standard of proof is the same as that required for a criminal conviction." *People v. Williams*, 312 Ill. App. 3d 232, 234 (2000). It follows that, unless otherwise noted in section 104-25, the same rules governing the admission of evidence in a criminal proceeding should apply in a discharge hearing. Therefore, testimony deemed reliable pursuant to section 115-10 is admissible in a discharge hearing.

¶ 26    The plain language of section 104-25 supports our determination. Section 104-25(e) allows transcripts of testimony taken at the discharge hearing to be admitted into evidence at a subsequent trial "subject to the rules of evidence." 725 ILCS 5/104-25(e) (West 2008). Section 104-25(f) states that in the event the court does not acquit the defendant, he "may appeal from such judgment in the same manner provided for an appeal from a conviction in a criminal case." 725 ILCS 5/104-25(f) (West 2008). See also *People v. Cardona*, 2012 IL App (2d) 100542, ¶¶ 9-15, *appeal allowed*, No. 114076 (Ill. May 30, 2012) (although the appellate court did not decide the issue of whether section 115-10 is applicable in a discharge hearing, testimony found reliable pursuant to that section was allowed and considered by the trial court in the defendant's discharge hearing).

¶ 27    However, Orengo contends that section 104-25 allows the admission of hearsay only "on secondary matters such as testimony to establish the chain of possession of physical evidence, laboratory reports, authentication of transcripts taken by official reporters, court and business records, and public documents." 725 ILCS 5/104-25(a) (West 2008). He argues that since the statute is silent as to the admission of hearsay on primary matters, such evidence is precluded in a discharge hearing.

¶ 28    To accept Orengo's argument, however, we would have to agree that the legislature intended to provide greater protection of discharge hearing defendants' rights than of criminal defendants' rights. Our supreme court disagreed with this position in *People v. Waid*, 221 Ill. 2d 464, 480 (2006). In *Waid*, the court found that the constitutional rights of discharge hearing defendants are not protected to the same degree as they would be in a criminal trial. *Id*. It therefore determined that section 104-25(a), which allows admission of hearsay evidence at a discharge hearing, does not violate the confrontation clause or the due process clause. *Id*. It concluded that "reliable hearsay of the type allowed under section 104-25(a) is admissible at a discharge hearing." *Id*. Hearsay statements admitted through section 115-10 hearings are deemed reliable for use in criminal proceedings. The mere omission of an express provision allowing hearsay statements pursuant to section 115-10 does not reflect the legislature's intent to preclude such evidence from a discharge hearing. See *People v. Bowen*, 183 Ill. 2d 103, 112 (1998) (the omission of a provision in section 115-10 for videotaped testimony does not prove an intent to bar such testimony).

¶ 29    As the State argues, our determination is further supported by the use of section 115-10 in juvenile delinquency proceedings. Due to the remedial nature of the Juvenile Court Act

of 1987 (705 ILCS 405/1-2 (West 2008)), juvenile delinquency proceedings are not considered criminal proceedings. *In re Beasley*, 66 Ill. 2d 385, 389 (1977). However, at the adjudicatory hearing the standard of proof beyond a reasonable doubt applies as does the criminal rules of evidence. *In re R.G.*, 283 Ill. App. 3d 183, 186 (1996). Trial courts have held section 115-10 hearings in juvenile delinquency proceedings to determine whether to admit a young victim's hearsay statements. See *In re Rolandis G.*, 232 Ill. 2d 13 (2008); *In re T.T.*, 384 Ill. App. 3d 147 (2007). Like juvenile delinquency proceedings, discharge hearings are not criminal proceedings but apply to the evidence the same standard of proof for criminal convictions.

¶ 30    Furthermore, the purpose underlying section 115-10 would not be well served if courts could not apply it to testimony in discharge hearings. In *People v. Holloway*, 177 Ill. 2d 1, 9 (1997), our supreme court noted that the section was passed in response to the difficulty prosecutors faced in proving that their evidence against persons accused of the sexual assault of young children was sufficient beyond a reasonable doubt, due to the inadequacy of the children's testimony. In particular, the legislature was "concerned with the ability of the victim to understand and articulate what happened during the incident and the reluctance many victims have relating the details of the incident at trial." *Holloway*, 177 Ill. 2d at 9. With the passage of section 115-10, the legislature created a hearsay exception to allow into evidence corroborative testimony of outcry statements the victim made to others. *Id.*

¶ 31    In a discharge hearing, the State must present evidence that proves beyond a reasonable doubt that a defendant committed the offense. If the sexual assault victim in a discharge hearing is a young child, section 115-10 would serve the same purpose in allowing reliable corroborative testimony of hearsay statements the child made to others about the incident. As Orengo himself argues, without M.M.'s hearsay statements to Malave and Kato, the only evidence corroborating his statement is the testimony of M.M., who was three years old at the time of the incident and nine years old when she testified at Orengo's hearing. We find that the trial court did not err in conducting a section 115-10 hearing and, upon finding the statements M.M. made to Malave and Kato sufficiently reliable, allowing their testimony in Orengo's subsequent discharge hearing. We further hold that any evidence admissible at a criminal trial is also admissible at a discharge hearing.

¶ 32    The State argues that even without the testimony of Malave and Kato, the evidence proves beyond a reasonable doubt that Orengo committed the alleged acts. Orengo disagrees, arguing that the testimony of M.M. and Carmen is not sufficient to corroborate his statement that a crime occurred. Proof of the *corpus delicti* cannot rest solely on defendant's statement; the State must also present independent evidence corroborating the statement. *People v. Sargent*, 239 Ill. 2d 166, 183 (2010). Orengo argues that he was charged with numerous specific allegations of sexual contact with M.M., but cites to M.M.'s testimony that her and Orengo's underwear remained on the entire time and that Carmen testified that she did not observe any actual contact between M.M. and Orengo. He contends that this testimony could not establish most of the allegations charged and, as support, cites to *Sargent*.

¶ 33    In *Sargent*, our supreme court reasoned that "where a defendant confesses to multiple offenses, the corroboration rule requires that there be independent evidence tending to show that defendant committed each of the offenses for which he was convicted." *Sargent*, 239 Ill.

2d at 185. However, in *People v. Lara*, 2012 IL 112370, our supreme court recently clarified its decision in *Sargent*. It found that "*Sargent* recognized that in some instances one type of criminal activity could be 'so closely related' to another type that 'corroboration of one may suffice to corroborate the other.' [Citation.]" *Id*. ¶ 26. It further determined that "whether certain independent evidence is sufficient to establish specific charged offenses must be decided on a case-by-case basis." *Id*. Our supreme court concluded that "*Sargent* may be properly read to support the general rule that corroboration is not compulsory for each element of every alleged offense." *Id*. In other words, independent evidence must only correspond with the confession and "[c]orroboration of only some of the circumstances related in a defendant's confession is sufficient." *Id*. ¶ 45.

¶ 34    Orengo was charged with various allegations of criminal sexual assault and criminal sexual abuse. Criminal sexual assault occurs when a person commits an act of sexual penetration and: (1) uses force or threat of force; or (2) knows that the victim is unable to understand the nature of the act or is unable to give knowing consent. 720 ILCS 5/12-13 (a)(1), (2) (West 2008). Sexual penetration is "any contact, however slight, between the sex organ *** of one person [and] the sex organ, mouth or anus of another person." 720 ILCS 5/12-12(f) (West 2008). Criminal sexual abuse occurs when a person "commits an act of sexual conduct and *** knew that the victim was unable to understand the nature of the act or was unable to give knowing consent." 720 ILCS 5/12-15(a)(2) (West 2008). Sexual conduct is defined as "any *** knowing touching or fondling by the victim or the accused, either directly or through clothing, of the sex organs, anus or breast of the victim or the accused, or any part of the body of a child under 13 years of age *** for the purpose of sexual gratification or arousal of the victim or the accused." 720 ILCS 5/12-12(e) (West 2008).

¶ 35    Although the testimony of M.M. and Carmen did not corroborate every specific allegation against Orengo, M.M. did state that while Carmen went to the store Orengo tried to remove M.M.'s clothes and was on top of her moving from side to side with his penis touching M.M.'s underwear and stomach. When Carmen returned, she called out but no one responded. Hearing her, Orengo told M.M. to pull up her pants. Carmen went to the bedroom and found Orengo with his underwear down to his knees. Carmen also saw M.M. with her pants and underwear around her ankles. Carmen asked Orengo "what's going on here" and then slapped him and kicked him out of the apartment.

¶ 36    In his statement, Orengo recounted that after Carmen left for the store, M.M. came out of the shower and approached him, unclothed. She pulled down his pants and touched his penis. They laid down on the bed, naked, and M.M. climbed on top of him, placed her vagina on top of his penis, and moved back and forth. Orengo stated that M.M. then took his hand and placed them on her vagina and breasts. His fingers went inside her vagina and his mouth touched M.M.'s vagina and buttock. Orengo stated that M.M. sucked his penis. When he heard Carmen return he rushed to put on his pants. Carmen came into the room and saw that he was not wearing pants and M.M. was naked. Orengo stated that Carmen hit him across the face and kicked him out of the house. The independent evidence corroborates some of the circumstances of Orengo's statement and corresponds with the statement, as required by *Lara*.

¶ 37        For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 38        Affirmed.