2022 IL App (2d) 210295-U
No. 2-21-0295
Order filed August 26, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 18-CF-2295 |
| ANTHONY WALKINE, | ) ) | Honorable John A. Barsanti, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE JORGENSEN delivered the judgment of the court.
Presiding Justice Bridges and Justice Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*:    In defendant's appeal following a discharge hearing, we (1) affirm the trial court's not not guilty finding of resisting or obstructing a peace officer; (2) reverse the finding of not not guilty of home invasion, because there was no evidence that defendant lacked authority to enter the victim's home; (3) reverse the finding of not not guilty of aggravated battery, because there was no evidence that the victim's disability was permanent; (4) enter a finding of not not guilty of simple battery; and (5) remand for (a) redetermination of the appropriate extended period of commitment for treatment and (b) any appropriate further proceedings.

¶ 2    Defendant, Anthony Walkine, charged with various criminal offenses, was found unfit to stand trial and committed to the Department of Human Services (Department) for treatment. Following a discharge hearing, the trial court found defendant not not guilty of all the charges and

extended his period of commitment. On appeal, defendant challenges: (1) the sufficiency of the evidence to sustain the trial court's findings as to certain charges and (2) the length of the commitment-period extension. We affirm in part, reverse in part, and remand for further proceedings.

¶ 3                              I. BACKGROUND

¶ 4     On January 16, 2019, the State charged defendant by indictment with a single count of home invasion (720 ILCS 5/19-6(a)(2) (West 2018)), two counts of aggravated battery (*id.* § 12-3.05(d)(2)), and four counts of resisting or obstructing a peace officer (*id.* § 31-1(a)). On March 6, 2019, the trial court found defendant unfit to stand trial and remanded him to the Department for treatment to restore him to fitness. On August 21, 2019, following a restoration hearing, the trial court found that defendant had been restored to fitness. However, on December 13, 2019, the trial court again found defendant unfit to stand trial and committed him to the Department's custody. In March 2021, at another restoration hearing, the trial court found that defendant had not been restored to fitness.

¶ 5     On May 5, 2021, the trial court held a discharge hearing. Elgin police officer Shawn Sproles testified that late on November 23, 2018, he was dispatched to a residence in Elgin to respond to a disturbance. Sproles arrived at the scene with fellow Elgin police officers Kappel and Alcorn. Two other Elgin officers, Arnold and Shuttrow, arrived later. Sproles encountered Jamar Hare, who was outside the residence on the back patio. Hare was seated in a wheelchair and was not wearing a shirt. Sproles was asked, "Was Mr. Hare ever able to get out of that wheelchair the entire time you interacted with him during this investigation?" Sproles answered, "No." Sproles was immediately asked again: "To the best of your knowledge, was he able to?" Sproles reiterated,

"No." Sproles observed a minor injury to Hare's wrist. Arnold testified, *inter alia*, that he observed an individual in a wheelchair at the scene.

¶ 6    During the hearing, the State played a 7-minute and 42-second excerpt of a video recording from a body camera worn by one of the officers. In the video, Hare spoke to a police officer. (The court admitted Hare's statements under the excited utterance exception to the hearsay rule.) Hare stated that the home was his and that defendant did not stay there. Hare told the officer that defendant was looking for his (defendant's) daughter. Hare further stated, "He beat my ass out of my house bro, looking for his daughter bro." Hare remarked that defendant was "just trying to fight everybody." According to Hare, defendant fought both him and his roommate and "was beating both our ass [*sic*]." Asked if he was injured, Hare replied, "A little bit, but not, no cuts and bruises, he put his hands on me, yeah." Hare indicated that defendant tried to hit him with a bat.

¶ 7    The video further shows that defendant came to the door of the house and opened it. Two officers ordered defendant to step outside, but he refused. Instead, he went back inside the residence and attempted to shut the door. Several officers rushed after defendant, and a struggle ensued as the officers attempted to subdue defendant. Defendant was taken back outside where he continued to struggle with four officers who were attempting to restrain him.

¶ 8    The trial court found defendant not not guilty of all charges and extended his commitment for treatment until December 13, 2022. This appeal followed.

¶ 9                                    II. ANALYSIS

¶ 10    Section 104-17(b) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/104-17(b)) (West 2018)) provides that if a defendant is found unfit to stand trial due to a mental disability, the court may order him or her placed in the custody of the Department for treatment.

The Department staff member supervising the defendant's treatment shall file a report with the court indicating, *inter alia*, the staff member's opinion as to the probability that the defendant will attain fitness within a certain period, which, if the defendant is charged with a felony, shall be one year. *Id.* § 104-17(e). If, at the end of that period, the trial court finds that the defendant is still unfit, and that "no special provisions or assistance can compensate for his disabilities and render him fit" (*id.* § 104-23(b)), the State shall ask the court to (1) set the matter for a discharge hearing under section 104-25 of the Code ((*id.* § 104-25), (2) release the defendant from custody and dismiss the charges against him with prejudice, or (3) remand the defendant for commitment proceedings under the Mental Health and Developmental Disabilities Code (405 ILCS 5/1-100 *et. seq.* (West 2018)).

¶ 11    At a discharge hearing, the trial court must determine whether there is sufficient evidence to prove the defendant's guilt of the criminal charges beyond a reasonable doubt. However, a finding that the evidence is sufficient does not result in criminal conviction. Accord *People v. Orengo*, 2012 IL App (1st) 111071, ¶ 24 ("[A] discharge hearing *** is not a criminal prosecution.") "[A] discharge hearing is a civil, 'innocence only' proceeding to determine whether to acquit a defendant of the charges when there is a finding of unfitness." *Id.* If the evidence is sufficient, the court finds the defendant " 'not not guilty.' " *Id.*

¶ 12    Section 104-25(d) of the Code (725 ILCS 5/104-25(d) (West 2020)) provides:

"(d) If the discharge hearing does not result in an acquittal of the charge the defendant may be remanded for further treatment and the one year time limit *** shall be extended as follows:

(1) If the most serious charge upon which the State sustained its burden of proof was a Class 1 or Class X felony, the treatment period may be extended up to

a maximum treatment period of 2 years; if a Class 2, 3, or 4 felony, the treatment period may be extended up to a maximum of 15 months;

(2) If the State sustained its burden of proof on a charge of first degree murder, the treatment period may be extended up to a maximum treatment period of 5 years."

Furthermore, "[i]n no event may the treatment period be extended to exceed the maximum sentence to which a defendant would have been subject had he or she been convicted in a criminal proceeding." *Id.* § 104-25(g)(4).

¶ 13    Here, the trial court found defendant not not guilty of home invasion, aggravated battery, and resisting or obstructing a peace officer. Defendant concedes that the State proved him not not guilty of resisting or obstructing a peace officer, which is Class A misdemeanor (720 ILCS 5/31-1(a) (West 2018). However, he contends that he should have been acquitted of home invasion. He also contends that, although the State presented sufficient evidence that he committed simple battery, the evidence was insufficient to sustain a finding of not not guilty of *aggravated battery.*

¶ 14    On a challenge to the sufficiency of the evidence, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). As our supreme court has observed:

"Under this standard, a reviewing court will not substitute its judgment for that of the trier of fact on issues of the weight of evidence or the credibility of witnesses. [Citation.] Indeed, it is the responsibility of the trier of fact to 'fairly *** resolve conflicts in the

testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.' [Citation.]" *People v. Cooper*, 194 Ill. 2d 419, 431 (2000). However, when the State's case against the defendant depends on inferences from the evidence, those inferences must be reasonable. *People v. Bell*, 234 Ill. App. 3d 631, 637 (1992). "An inference is a conclusion as to the existence of a particular fact reached by considering other facts in the usual course of human reasoning." (Internal quotation marks omitted.) *People v. Sanchez*, 2013 IL App (2d) 120445, ¶ 28. "A reasonable inference may support a criminal conviction. However, there is a line between reasonable inference and mere speculation." *Id.*

¶ 15    Section 19-6(a)(2) of the Criminal Code of 2012 (Criminal Code) (720 ILCS 5/19-6(a)(2) (West 2018)) provides, in pertinent part:

> "(a) A person who is not a peace officer acting in the line of duty commits home invasion when without authority he or she knowingly enters the dwelling place of another when he or she knows or has reason to know that one or more persons is present or he or she knowingly enters the dwelling place of another and remains in the dwelling place until he or she knows or has reason to know that one or more persons is present *** and
>
> ***
>
> (2) Intentionally causes any injury *** to any person or persons within the dwelling place[.]"

¶ 16    Defendant contends that the State failed to prove beyond a reasonable doubt that he lacked authority when he entered Hare's dwelling place. The State argues that it is reasonable to infer that when defendant came to Hare's dwelling, "a resident of the dwelling knew the defendant's daughter was not inside the victim's residence and could have responded as such at the door without the defendant making entry inside late at night." To the contrary, whether defendant was

an invited guest or an uninvited intruder is a matter of pure speculation. Indeed, later in its brief, the State acknowledges that whether defendant was invited into the dwelling is "something not shown one way or the other by the evidence presented to the trial court."

¶ 17    The State also observes that, for purposes of a home invasion prosecution, entry into a dwelling is without authorization if the defendant enters with the intent to commit a crime. As stated in *People v. Bush*, 157 Ill. 2d 248, 253-54 (1993):

> [W]hen a defendant comes to a private residence and is invited in by the occupant, the authorization to enter is limited and *** criminal actions exceed this limited authority. [Citation.] No individual who is granted access to a dwelling can be said to be an authorized entrant if he intends to commit criminal acts therein, because, if such intentions had been communicated to the owner at the time of entry, it would have resulted in the individual's being barred from the premises *ab initio.* [Citation.] Thus, the determination of whether an entry is unauthorized depends upon whether the defendant possessed the intent to perform a criminal act therein at the time entry was granted. [Citations.] If *** the defendant gains access to the victim's residence through trickery and deceit and with the intent to commit criminal acts, his entry is unauthorized and the consent given vitiated because the true purpose for the entry exceeded the limited authorization granted. Conversely, where the defendant enters with an innocent intent, his entry is authorized, and criminal actions thereafter engaged in by the defendant do not change the status of the entry."

¶ 18    The State argues that "[t]he evidence admitted at trial chronicled the defendant's aggression and escalating hostility from his beatdown of the residents to his arrest." According to the State, "[i]t is reasonable to infer the defendant intended to wreak havoc and attack anyone he

believed stood in the way of him finding his daughter upon entering the dwelling." We disagree. There is simply no evidence in the record that, before entering the dwelling, defendant had formed the intent to commit any crime. Accordingly, the trial court should have acquitted defendant of the home-invasion charge.

¶ 19 We next consider whether the State presented sufficient evidence to sustain the trial court's finding of not not guilty of aggravated battery. Defendant was charged under section 12-3.05(d)(2) of the Criminal Code (720 ILCS 5/12-3.05(d)(2) (West 2018)), which provides:

"(d) Offense based on status of victim. A person commits aggravated battery when, in committing a battery, other than by discharge of a firearm, he or she knows the individual battered to be any of the following:

\*\*\*

(2) A person who \*\*\* has a physical disability."

Defendant does not deny that he committed battery against Hare. However, defendant claims that the State failed to prove beyond a reasonable doubt that Hare had a physical disability, let alone that defendant knew about it. For purposes of the aggravated battery statute, " '[p]erson with a physical disability' means a person who suffers from a *permanent* and disabling physical characteristic, resulting from disease, injury, functional disorder, or congenital condition." (Emphasis added.) *Id.* § 12-0.1.

¶ 20 The State argues that the evidence was sufficient to establish that Hare was disabled and that defendant knew it. The State notes that the bodycam footage showed that Hare was outside in a wheelchair, without a shirt, from the time the police arrived until defendant was arrested. The State further notes that Sproles testified that defendant never left the wheelchair while they spoke and that Arnold also testified that he observed an individual in a wheelchair. According to the

State, "[t]here was sufficient evidence the victim's mobility was limited so much that it necessitated use of a wheelchair." Absent from the record, however, is any evidence that whatever condition required Hare to use a wheelchair at the time of the incident was *permanent*. Based on the record, whether Hare's need for a wheelchair was permanent or merely temporary is a matter of pure speculation. We, therefore, agree with defendant that the finding of not not guilty of aggravated battery must be reduced to not not guilty of simple battery, which is a Class A misdemeanor (*id.* § 12-3(b)) carrying a sentence of less than one year in the county jail (730 ILCS 5/5-4.5-55(a) (West 2018)). Resisting or obstructing a peace officer is also a Class A misdemeanor (720 ILCS 5/31-1(a) (West 2018)) carrying the same sentence (730 ILCS 5/5-4.5-55(a) (West 2018)). Thus, in extending defendant's treatment period for another 19 months, the trial court "exceed[ed] the maximum sentence to which a defendant would have been subject had he or she been convicted in a criminal proceeding" (725 ILCS 5/104-25(g)(4) (West 2018)).

¶ 21    Accordingly, we (1) affirm the trial court's not not guilty finding of resisting or obstructing a peace officer, (2) reverse the finding of not not guilty of home invasion, (3) reverse the finding of not not guilty of aggravated battery, (4) enter a finding of not not guilty of simple battery, and (5) remand to the trial court for a determination of the appropriate extended period of commitment for treatment and for any appropriate additional proceedings under section 104-25 of the Code (*id.* § 104-25).

¶ 22                                III. CONCLUSION

¶ 23    For the reasons stated, the judgment of the circuit court of Kane County is affirmed in part and reversed in part, and the case is remanded for further proceedings consistent with this order.

¶ 24    Affirmed in part and reversed in part.

¶ 25    Cause remanded.