**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 190130

Order filed July 22, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| KRR INVESTMENTS, LLC, an Illinois Limited Liability Company, and FIRST MIDWEST BANK, as Trustee of Trust No. 8823, | ) ) ) ) ) | Appeal from the Circuit Court of the 13th Judicial Circuit, Grundy County, Illinois |
| Plaintiffs-Appellees, | ) ) | Appeal No.   3-19-0130 |
| v. | ) ) | Circuit No.   13-CH-141 |
| THE COUNTY OF GRUNDY, a Body Corporate and Politic of the State of Illinois, | ) ) ) ) | The Honorable Lance R. Peterson |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE LYTTON delivered the judgment of the court.
Presiding Justice McDade and Justice O'Brien concurred in the judgment.

_____

**ORDER**

*Held*:   (1) Trial court's order remanding matter to county board for further proceedings on special use application was not final and appealable; (2) trial court's ruling that zoning ordinance was arbitrary and capricious as applied to plaintiffs' property was supported by the evidence where property was zoned Industrial but used only for farming; and (3) trial court's declaration that plaintiffs' proposed use of property was reasonable did not usurp role of county board.

¶ 1 Plaintiffs KRR Investments and First Midwest Bank filed an application with defendant County of Grundy seeking (1) a map amendment rezoning their property from Industrial to Agricultural, and (2) a special use permit to operate a recreational vehicle (RV) campground on their property. Defendant denied plaintiffs' request for a map amendment and refused to consider their request for a special permit. Plaintiffs filed a complaint in circuit court seeking declaratory judgment and injunctive relief. The circuit court entered orders finding that (1) defendant's zoning ordinance was arbitrary and capricious as applied to plaintiffs' property, and (2) plaintiffs' proposed use of their property was reasonable. Defendant appeals those orders. We affirm.

¶ 2 BACKGROUND

¶ 3 In 2007, plaintiffs purchased approximately 44 acres of land in Goose Lake Township, Grundy County. Plaintiffs purchased the property from a bank that had foreclosed on the land. The property was vacant, unused and for sale for seven to eight years before plaintiffs' purchase. Midwest Bank owns 11.8 acres of the property, as trustee of Trust No. 8823, and KRR owns the remainder of the property. KRR is the beneficiary of Trust No. 8823. Plaintiffs' property consists of unimproved farmland. Approximately 10.2 acres of the 11.8 acres owned by First Midwest is located in a floodplain and/or floodway of the Kankakee River.

¶ 4 Plaintiffs' property is zoned Industrial, according to the Grundy County Zoning Ordinance in effect at the time of plaintiffs' purchase. The eastern boundary of the property is the Kankakee River. The property to the west is zoned Industrial and used primarily as farmland. The area south of the property is zoned Industrial and used for industrial purposes. The property to the north is zoned Agricultural Residential and contains a residential subdivision.

¶ 5 Defendant adopted the Grundy County 2020 Comprehensive Land Use Plan in 2005. That plan, which was in effect when plaintiffs purchased the subject property, states that one of its

objectives is to "promote environmentally supportive recreational uses of lands in flood plains and areas adjacent to waterways." It further states: "In order to provide adequate recreational facilities in the region, a tremendous increase in the amount of park camp sites *** will be needed."  The map accompanying the Land Use Plan identifies plaintiffs' property as "Commercial Recreation."

¶ 6    In 2010, defendant enacted the Grundy County Unified Development Ordinance, which permits campgrounds and recreational vehicle (RV) parks in property zoned Agricultural, subject to a special use permit. The ordinance sets forth the requirements for RV parks and campgrounds and states that the purpose of those facilities is to offer "alternative uses for marginally productive farmland."

¶ 7    On October 12, 2012, plaintiff KRR, on behalf of itself and Trust No. 8823, filed a written application with defendant requesting an amendment to the zoning of the 11.8 acres of property owned by First Midwest Bank. KRR sought to have the property rezoned from Industrial to Agricultural and requested the issuance of a special use permit to allow KRR to operate a seasonal campground on the property.

¶ 8    After local and state agencies reviewed the application, defendant's Land Use Committee issued 14 special use conditions for the campground. KRR agreed to abide by those conditions. Thereafter, the Grundy County Planning Committee reviewed KRR's application. After its review, the Planning Committee recommended that the Grundy County Planning and Zoning Committee approve the application. The Planning and Zoning Committee next reviewed the application and recommended that it be placed before the County Board.

¶ 9    On April 16, 2013, a public hearing was held before the Grundy County Zoning Board of Appeals. Robert Schmude, a professional engineer, testified that the property owned by plaintiffs is currently being used as farmland, but the portions of the property occupied by wetlands and

3

woodlands are not farmed. Schmude estimated that all but six-and-a-half to seven acres of plaintiffs' property is occupied by a floodplain or floodway.

¶ 10    Jay Heap, a real estate appraiser, testified that KRR's proposed campground would not negatively affect property values in the area. He based his opinion on the existence of campground facilities throughout the state that adjoin residential properties.

¶ 11    Darryl Harrison testified that plaintiffs' property has been "barely farmed" for the past 20 years. He expressed concerns that KRR's proposed campground would lower nearby property values and endanger wildlife. Other nearby residents raised similar objections to KRR's application and also argued that the proposed campground would inhibit industrial growth and be unsafe because of increased boat traffic and potential flooding. Some residents expressed positive opinions about the proposed campground, stating that it would give more people access to the Kankakee River.

¶ 12    At the end of the hearing, the County Zoning Board of Appeals voted to recommend denial of KRR's application. The application then went back to the Land Use Committee, which provided a neutral recommendation of the application to the County Board.

¶ 13    On June 11, 2013, the County Board denied KRR's application for a map amendment to change the zoning of the property from Industrial to Agricultural and took no action on KRR's request for a special use permit. Two weeks later, plaintiffs filed a complaint in circuit court challenging the County Board's decision. In December 2013, plaintiffs filed an amended complaint. Count I sought declaratory judgment, seeking declarations that (A) the county ordinance's classification of plaintiffs' property as Industrial is arbitrary, capricious and unreasonable; (B) plaintiffs' proposed use of their property is reasonable; and (C) defendant's actions and inactions constituted a taking of plaintiffs' property without reasonable compensation.

4

Count II sought an injunction, requesting the court to enter orders (A) enjoining defendant to approve plaintiffs' request for a map amendment and a special use permit, and (B) enjoining defendant from interfering with plaintiffs' use of the property as a seasonal campground. Goose Lake Township filed a petition to intervene, which the trial court granted.

¶ 14        A bench trial was held in August 2017. In addition to the testimony and evidence presented at trial, the court reviewed and considered testimony presented at the Grundy County Zoning Board of Appeals hearing.

¶ 15        At trial, John J. Russ, Jr. testified that he and his family own KRR. He purchased the subject property to develop it as a seasonal campground based on defendant's 2020 Comprehensive Land Use Plan, which designated the property as "Commercial Recreation." Russ hired Robert Schmude, a civil engineer, to create drawings and a site plan for the property. Schmude obtained the necessary permits for the property from U.S. Army Corps of Engineers, Illinois Department of Natural Resources, and Illinois Environmental Protection Agency. Grundy County's consulting engineer, Steve Amann, provided a list of 20 items he wanted changed from Schmude's original plan to "bring it in line with exactly how Grundy County comprehensive plan and unified development code saw these things developed." Schmude made the changes Amann requested, and Amann wrote a letter of acceptance stating that the proposal met the County's guidelines.

¶ 16        Schmude also prepared a wetland and floodplain delineation map, which he provided to the Grundy County Zoning Board of Appeals. To address concerns from nearby residents, the plans were changed to move camping sites further away from residential areas. To satisfy defendant, an archeological study and a zebra mussel study were performed at the site. Based on a recommendation from the Illinois Department of Public Health, Russ raised well casings on the property. KRR's application was reviewed and approved by the Illinois Department of Public

Health, Grundy County Emergency Management Agency, Coal City Fire Department, Illinois Historical Preservation Society and Grundy County Highway Department. Schmude testified that the RV campground proposed by KRR constitutes "commercial recreation."

¶ 17        Robert Tonelli, a professional planner, testified that he reviewed KRR's application. He explained that a county's land use plan is "critically" important as it is "one of the most significant tools that local government * * * has to set their goals, objectives, [and] visions of how they want to see property used and developed." He relies on such plans to gain an understanding of a county's desires for the development of its property. He believes KRR's proposed use of its property is consistent with the County's 2020 Land Use Plan because the plan identified the property as "commercial recreation" and mentioned using property adjacent to riverways as recreational property. He also believes the subject property is well suited for commercial recreation because it is located on the Kankakee River. He does not believe industrial use of the property is appropriate because of its proximity to the river and residential property and because it has flooding issues. He believes a change in zoning of the property from Industrial to Agricultural would be appropriate because the property is used for farming and is adjacent to residential property. The property serves as a buffer between Industrial and Residential property.

¶ 18        Tonelli testified that KRR's proposed use of the property is consistent with the health, safety and general welfare of the community. He stated that KRR addressed and rectified all concerns the County had regarding all issues, including noise, garbage and congestion. He does not know if a seasonal campground is the highest and best use of the property because he did not perform that type of analysis but stated that "it represents a much higher use than the use it's currently put to." He could not think of a better use for the property. He believes KRR's proposed use of the property constitutes "commercial recreation."

6

¶ 19    Defendant presented testimony from Michael Hoffman, a community planning consultant. He opined that KRR's proposed campground "was not an appropriate use" of plaintiffs' property because the property is located in a highly industrial area and in a flood plain. He does not believe the proposed campground is "commercial recreation" because it is not an activity consumers pay a daily or hourly fee for, such as a go-cart track, paintball facility or miniature golf course. Hoffman also had safety concerns with the property, including the existence of only one road for ingress and egress and its proximity to a major road, which he thought would be dangerous for hikers and bikers coming from the property. Hoffman had no traffic volume concerns. He believes the best use of the property is agricultural because of its location in a flood plain.

¶ 20    Heidi Miller, Grundy County building and zoning planner, testified that the proposed campground was not a good fit for the property "because of the flood plain issues and the lack of conservation of that area." She believes "commercial recreation" includes boating but not camping. She testified that Grundy County adopted a new comprehensive land use plan in 2014, just months after the County Board denied plaintiffs' application for a map amendment. Under the new plan, KRR's property is identified as "prime agricultural."

¶ 21    Nancy Norton, president and CEO of Grundy County Economic Development Council (Council) testified that KRR's proposed campground would inhibit future industrial development in the area. She believes it is "inconsistent" to have an industrial facility next to a "residential campground." She testified that a new industrial facility is currently being built west of plaintiffs' property. She is not aware of any industry showing an interest in purchasing plaintiffs' property since she has been president and CEO of the Council, which is more than 17 years.

¶ 22    Steven Kodat, a farmer and member of the Goose Lake Planning and Zoning Commission, testified that his father has been leasing plaintiffs' property for six or seven years for farming. His

7

father farmed the property approximately 25 years before that. The property sat empty and unused for approximately 18 years before plaintiffs purchased it.

¶ 23     On June 1, 2018, the trial court issued a nine-page memorandum and decision in which it applied the factors set forth in *La Salle National Bank of Chicago v. County of Cook,* 12 Ill. 2d 40 (1957), and determined that the County Board's decision to deny the zoning amendment for the subject property from Industrial to Agricultural was arbitrary and capricious. The court granted plaintiffs' request for an injunction in count II of their complaint, requiring defendant "to approve plaintiff's request for a Map Amendment from Industrial (I) to Agricultural (A)." The court denied count I of plaintiffs' amended complaint, finding that plaintiffs failed to present evidence on the value of their property or the loss of revenue caused by defendant's actions. With respect to plaintiffs' request for a special use permit, the court stated: "Because the county did not take action on the requested special use permit there is no legislative action for the court to rule upon at this time and this cause is hereby remanded to the County for further proceedings if plaintiff chooses to pursue action on its application for said permitted use."

¶ 24     Two months later, plaintiffs filed a motion to enforce judgment, asserting that defendant refused to hold a hearing on its application for a special use permit. On February 19, 2019, the trial court issued a "Supplemental Clarifying Order," finding in favor of plaintiffs on paragraphs (A) and (B) of count I of their amended complaint, holding that the county ordinance's classification of plaintiffs' property as Industrial is arbitrary, capricious and unreasonable and that plaintiffs' proposed use of their property is reasonable. The court remanded the case "to the County Board to act on the special use permit application, consistent with this court's findings and rulings at the next possible board meeting." On March 13, 2019, defendant filed a notice of appeal.

¶ 25                                                      ANALYSIS

8

¶ 26                                                    I.

¶ 27        Plaintiffs argue that we lack jurisdiction to consider the propriety of the trial court's June 1, 2018 order because defendant did not file its notice of appeal within 30 days of its entry. Defendant responds that we have jurisdiction to consider the propriety of that order because it was nonfinal and a step in the procedural progression that led to the trial court's final order, which it timely appealed.

¶ 28        Illinois Supreme Court Rules 301 and 303 govern appeals from "final judgments" entered by trial courts. See *People v. Orengo*, 2012 IL App (1st) 111071, ¶ 3. Rule 301 authorizes appeals from the "final judgment of a circuit court." Ill. S. Ct. R. 301 (eff. Feb. 1, 1994). Rule 303 requires a notice of appeal to be filed "within 30 days after the entry of the final judgment appealed from." Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017).

¶ 29        To determine if a judgment is final, the court must examine "whether the judgment fully and finally disposes of the rights of the parties to the cause so that no material controverted issue remains to be determined." *Cory Corp. v. Fitzgerald,* 403 Ill. 409, 414 (1949). When a case is remanded for further proceedings, it may or may not constitute a final judgment depending on the scope of the proceedings on remand. See *id*.

¶ 30        A trial court's order remanding a cause to an administrative agency to act in accordance with the court's directions is final for purposes of appeal. See *Lippert v. State Property Tax Appeal Board,* 273 Ill. App. 3d 150, 153 (1995). However, a trial court's remand to an administrative agency is not final if the court orders a new hearing (*Lippert v. State Property Tax Appeal Board,* 273 Ill. App. 3d 150, 153 (1995)) or if the remand involves disputed questions of facts or law (*Martin v. Cajda,* 238 Ill. App. 3d 721, 727 (1992)). In those circumstances, a final judgment is not entered because "the rights of the parties have not yet been fully and finally adjudicated."

*Lippert,* 273 Ill. App. 3d at 153. When a case is remanded to an administrative agency for further proceedings, the circuit court retains jurisdiction over the action on remand. *Id.*; *Page v. City of Chicago*, 299 Ill. App. 3d 450, 457 (1998). Only after the circuit court has examined the results of the additional proceedings will its subsequent order be final and appealable. *Mitrenga v. Martin,* 110 Ill. App. 3d 1006, 1008 (1982).

¶ 31 An appeal from a final judgment draws into question all prior nonfinal orders that produced the judgment. *Burtell v. First Charter Service Corp.,* 76 Ill. 2d 427, 433 (1979); *In re Estate of Nicholson,* 268 Ill. App. 3d 689, 694 (1994). "A prior nonfinal order is reviewable if it is a step in the procedural progression leading to the judgment specified in the notice of appeal." *Hough v. Kalousek*, 279 Ill. App. 3d 855, 864 (1996). A nonfinal judgment that is "a step in the procedural progression leading to the judgment specified in the notice of appeal" does not have to be identified in the notice of appeal. See *Nicholson*, 268 Ill. App. 3d at 694.

¶ 32 Here, on June 1, 2018, the trial court entered judgment in favor of KRR on count II of plaintiffs' amended complaint, enjoining the County "to approve plaintiff's request for a Map Amendment from Industrial (I) to Agricultural (A)." The court did not rule on plaintiffs' request for a special use permit, stating that "because the County did not take action on the requested special use permit there is no legislative action for the court to rule upon at this time." The court further stated: "[T]his cause is hereby remanded to the County for further proceedings if plaintiff chooses to pursue action on its application for said permitted use."

¶ 33 Plaintiffs contend that defendant's failure to file a notice of appeal within 30 days of the June 1, 2018 order divests us of jurisdiction to consider it whether it was properly entered. We disagree.

¶ 34 The trial court's June 1, 2018 order did not fully and finally dispose of plaintiffs' claims. It only granted plaintiffs the injunction they requested with respect to the map amendment. The court did enter judgment on plaintiffs' request for approval of their application for a special use permit but remanded that matter to the County Board for "further proceedings." The "further proceedings" before the County Board would consist of a hearing at which the County Board would be required to resolve questions of fact and law. See *City of Chicago Heights v. Living Word Outreach Full Gospel Church and Ministries, Inc.*, 196 Ill. 2d 1, 20-22 (2001) (in determining whether to grant a special use permit, city council had to adhere to applicable regulations and ordinances and consider facts and circumstances). Thus, the June 1, 2018 order was not final. See *Martin,* 238 Ill. App. 3d at 727.

¶ 35 Because the court's June 1, 2018 order did not fully and finally adjudicate the rights of the parties, it was not final and appealable. See *Lippert,* 273 Ill. App. 3d at 153; *Martin,* 238 Ill. App. 3d at 728. Further, an appeal from the court's June 1, 2018 would have been premature because the trial court had to be given an opportunity to review the action taken by the County Board on plaintiffs' application for a special use permit before appellate jurisdiction would be conferred on this court. See *Mitrenga,* 110 Ill. App. 3d at 1008; *Doyle v. City of Crystal Lake*, 183 Ill. App. 3d 405, 411 (1989).

¶ 36 The trial court's February 19, 2019 order was the first final and appealable order entered. It granted plaintiffs the relief they requested and remanded the cause to the County Board to act in accordance with its directions. See *Lippert,* 273 Ill. App. 3d at 153. Defendant timely filed its notice of appeal within 30 days of entry of that order and identified that order in its notice of appeal. While defendant's notice of appeal did not mention the trial court's June 1, 2018 order, we have jurisdiction to review that order because it is a nonfinal order that is a step in the procedural

11

progression leading to the trial court's February 19, 2019 final order. See *Nicholson,* 268 Ill. App. 3d at 694; *Hough*, 279 Ill. App. 3d at 863-64. Thus, we will consider the propriety of the court's June 1, 2018 order.

¶ 37                                                                    II.

¶ 38        Defendant argues that the trial court erred in ruling that defendant's zoning ordinance, which classified plaintiffs' property as Industrial, was arbitrary and capricious. Plaintiffs respond that the trial court's decision was supported by the evidence.

¶ 39        It is primarily the province of a municipal body to determine the use and purpose to which property may be devoted. *La Salle National Bank of Chicago v. Cook County*, 12 Ill. 2d 40, 46 (1957). A court will not interfere with the discretion of a municipal body "unless the legislative action of the municipality is shown to be arbitrary, capricious or unrelated to the public health, safety and morals." *Id.* Moreover, "if the restrictions imposed bear no real and substantial relation to the public health, safety, morals, comfort and general welfare, the ordinance is void." *Id*.

¶ 40        A zoning ordinance is presumptively valid; however, this presumption may be overcome by clear and convincing evidence presented by the plaintiff. *Id*. The following facts should be taken into consideration in determining the validity of an ordinance: (1) the existing uses and zoning of nearby property, (2) the extent to which property values are diminished by the particular zoning restrictions, (3) the extent to which the destruction of property values of plaintiff promotes the health, safety, morals or general welfare of the public, (4) the relative gain to the public as compared to the hardship imposed upon the individual property owner, (5) the suitability of the subject property for the zoned purposes, (6) the length of time the property has been vacant as zoned considered in the context of land development in the area in the vicinity of the subject property, (7) the care with which the community has undertaken to plan its land use development,

12

and (8) the evidence or lack of evidence of community need for the use proposed by the plaintiff. *Id.* at 46-47; *Sinclair Pipe Line Co. v. Village of Richton Park*, 19 Ill. 2d 370, 378 (1960). "No one factor is controlling." *La Salle National Bank*, 12 Ill. 2d at 47. "When it is shown that no reasonable basis of public welfare requires the limitation or restriction and resulting loss, the ordinance fails and the presumption of validity is dissipated." *Id*. at 47-48.

¶ 41　　　In cases involving the validity of zoning ordinances, "there is naturally a conflict of testimony *** and the credibility of witnesses is of great importance." *Id*. at 48. The trier of fact is in a superior position to that of a reviewing court in these cases. *Id*. When testimony is contradictory in a bench trial, the weight to be accorded testimony is a matter to be determined by the trial court and its findings will not be disturbed unless manifestly against the weight of the evidence. *Id*. Where the findings and judgment of the trial court are supported by the evidence, they should be affirmed. See *id*.

¶ 42　　　Here, the trial court considered the relevant factors set forth in *La Salle National Bank*, 12 Ill. 2d at 46-47, and *Sinclair Pipe Line Co.*, 19 Ill. 2d at 378, to determine if defendant's zoning ordinance was valid. The court found that the first factor, the existing uses and zoning of nearby property, "weigh[ed] slightly in favor of plaintiff" because the subject property "sits in an area of mixed zoning," and is located next to a residential subdivision, making it unsuitable for industrial development. The evidence supports the trial court's conclusion with respect to this factor. The subject property is surrounded by property zoned and used for a variety of purposes: the property directly to the east is the river; the property to the north is residential; the property to the west is zoned industrial but used primarily for farmland; and the property to the south is primarily industrial. Tonelli, a professional planner, testified that it would be inappropriate to use plaintiffs' property for industrial purposes because of its proximity to the river and residential property. He

13

testified that the property serves as a necessary buffer between industrial property to the south and west and residential property to the north. Based on the evidence and testimony presented at trial, the court did not err in finding this factor slightly supported plaintiffs.

¶ 43 The court determined the second factor, the extent to which property values are diminished by the particular zoning restrictions, also "weigh[ed] slightly in favor of plaintiff" because rezoning would have no detrimental effect on surrounding property values, and "[p]laintiff clearly suffers a loss from the County zoning decision." The evidence supported this conclusion. Jay Heap, a real estate appraiser, testified before the Zoning Board of Appeals that plaintiffs' proposed campground would not negatively affect property values in the area. While other individuals expressed concerns that plaintiffs' proposed campground would lower nearby property values, no real estate professional presented evidence that property values in the area would suffer. Further, the evidence showed that the proposed RV campground was a higher and better use of the property than farming, which is the only other use to which plaintiffs' property has been put for decades. The trial court's conclusion on this factor was proper.

¶ 44 The court ruled that the third factor, the extent to which the destruction of property values of plaintiffs promotes the health, safety, morals or general welfare of the public, "weigh[ed] in favor of plaintiff" because defendant's denial of plaintiffs' proposed map amendment "precludes any development of the property and results in the property remaining vacant," and also "contradicts and inhibits the County's specific objectives set forth in its Land Use Plan for this property." Again, the evidence supports the trial court's conclusion. Tonelli testified that plaintiffs' proposed use of the property is consistent with the health, safety and general welfare of the community. Plaintiffs' proposed use is also consistent with the Grundy County 2020 Comprehensive Land Use Plan's objectives to "promote environmentally supportive recreational

14

uses of lands in flood plains and areas adjacent to waterways" and increase the number of park camp sites. Defendant disagrees with the trial court's conclusions that (1) the subject property could not be developed for other purposes, such as industry, and (2) would remain vacant. However, the evidence presented by defendant's own witnesses, Norton and Kodat, established that the property sat empty and unused for more than 17 years before plaintiffs purchased it, and no industry showed an interest in the property. The trial court's finding with respect to this factor was not against the manifest weight of the evidence.

¶ 45    The court ruled that the fourth factor, the relative gain to the public as compared to the hardship imposed upon the individual property owner, also "weigh[ed] in favor of plaintiff" because under the Industrial designation, the property can only be used for farming, which is not its highest and best use. Again, defendant argues that the evidence does not support the trial court's conclusion that the subject property could not be used for a purpose other than farming, such as industrial development. However, the evidence showed that for more than 25 years the subject property has been used exclusively for farming, which is not the highest and best use of the property, according to plaintiffs' witness, Tonelli. Tonelli also testified that it would be inappropriate for plaintiffs' property to be used for industrial purposes because of its proximity to the river and residential property, as well as flooding issues. Defendant's own expert, Hoffman, agreed that the property would likely not be used for industrial purposes but would continue to be used as farmland because of its location in a flood plain. The evidence supports the trial court's conclusion with respect to this factor.

¶ 46    The court determined that the fifth factor, the suitability of the subject property for the zoned purposes, also "weigh[ed] in favor of plaintiff" because a "significant portion of the property is located in the floodplain or floodway," making it unsuitable for industrial use. The undisputed

evidence established that all but 6 to 7 of the 44 acres owned by plaintiffs is occupied by a floodplain or floodway and all but 1.6 acres of the 11.2 acres on which plaintiffs intend to develop their campground is in a floodplain or floodway. On appeal, defendant contends that it is possible to develop the subject property for industrial purposes despite its location on a floodplain or floodway. However, defendant presented no evidence to support this conclusion at trial. Tonelli testified that the subject property was unsuitable for industrial use because of its flooding issues, and defendant's own witness, Hoffman, testified that the property would likely continue to be used for farming because of flooding on the property. Furthermore, the undisputed evidence showed that plaintiffs' property has been used only for farming and that no industry has ever shown an interest in purchasing the property despite it being for sale for many years before plaintiffs purchased it. Thus, the evidence supports the trial court's conclusion that this factor weighs in favor of plaintiffs.

¶ 47      With respect to the sixth factor, the length of time the property has been vacant as zoned considered in the context of land development in the area in the vicinity of the subject property, the court found this factor also "weigh[ed] in favor of plaintiff" because "[t]he property has been vacant for a significant period of time and it cannot be developed as currently zoned industrial." Defendant contends that the evidence does not support the court's conclusions that plaintiffs' property has been "vacant" and cannot be developed as industrial property. We disagree. The evidence presented at trial established that (1) only the land not located in a floodplain or floodway on plaintiffs' property is farmed, and (2) only six to seven acres of plaintiffs' property is not in a floodplain or floodway. Thus, the vast majority of plaintiffs' property (37 to 38 acres) is vacant and has been for many years. While defendant argues that the property can be used for industrial purposes, Tonelli testified that was not the case and none of defendant's witnesses provided

16

testimony as to how the property could be developed for industrial purposes despite its location in a floodplain and floodway. The evidence supports the trial court's conclusion on this factor.

¶ 48    The court also found the seventh factor, the care with which the community has undertaken to plan its land use development, "weigh[ed] in favor of plaintiff" because defendant's "intent and goal is to keep plaintiff's property 'vacant' or 'as is' in perpetuity and preclude plaintiff from any type of development whatsoever," which is inconsistent with the County's 2020 Comprehensive Land Use Plan. The evidence showed that the land use plan in place when plaintiffs purchased the property identified plaintiffs' property as "commercial recreation." Plaintiffs' witnesses, Schmude and Tonelli, testified that the RV campground proposed by plaintiffs constituted "commercial recreation." While defendant's witnesses disagreed, Miller admitted that at least one activity offered at the campground would constitute "commercial recreation." Further, plaintiffs' proposed use of the property is consistent with the county plan's objectives to "promote environmentally supportive recreational uses of lands in flood plains and areas adjacent to waterways" and increase the number of park camp sites. Thus, the trial court's conclusion regarding this factor was also supported by the evidence.

¶ 49    Finally, the court ruled that the eighth factor, the evidence or lack of evidence of community need for the use proposed by the plaintiff, "weigh[ed] in favor of plaintiff" because the County's 2020 plan showed a need for more campsites and commercial recreation facilities, particularly near waterways. One of the goals of the County's 2020 plan was to "promote environmentally supportive recreational uses of lands in flood plains and areas adjacent to waterways." The plan further stated: "In order to provide adequate recreational facilities in the region, a tremendous increase in the amount of park camp sites *** will be needed." The RV

17

campground proposed by plaintiffs satisfied both of these plan objectives. The evidence, therefore, supported the trial court's conclusion with respect to this factor.

¶ 50        In this case, the trial court properly considered the evidence and determined that all relevant factors weighed in favor of the conclusion that defendant's zoning ordinance was arbitrary and capricious as applied to plaintiffs' property. The court's determinations with respect to each factor were supported by the evidence and, thus, not against the manifest weight of the evidence. We affirm the court's ultimate conclusion that defendant's ordinance was void because its restrictions bore no real and substantial relation to the public health, safety, morals, comfort and general welfare.

¶ 51                                             III.

¶ 52        Finally, defendant argues that the trial court usurped its role by ruling that plaintiffs' proposed use of the property is reasonable. Plaintiffs respond that the trial court had the power and authority to rule on the reasonableness of their proposed use of the property based on the evidence presented at trial.

¶ 53        Counties have a right and a duty to maintain their land use through zoning regulations. See *Hawthorne v. Village of Olympia Fields,* 204 Ill. 2d 243, 255-56 (2003). A special use allows a property owner to use his property in a way that the controlling zoning code expressly permits as long as certain criteria or conditions are satisfied. *City of Chicago Heights,* 196 Ill. 2d at 16. "The purpose of special uses is to provide for those uses that are either necessary or generally appropriate for a community but may require special regulation because of unique or unusual impacts associated with them." *Id*. (quoting S. Conner, Zoning, in Municipal Law & Practice § 13.17 (Ill. Institute for Continuing Legal Education 2000)). "[T]he inclusion of a special use within a zoning ordinance ' "is tantamount to a legislative finding that the permitted use is in harmony with the

18

generally zoning plan and will not adversely affect the neighborhood.' " *Id*. at 17 (quoting 3 K. Young, Anderson's American Law of Zoning § 21.13, at 126 (4th ed. 1999 Supp.) (quoting *Twin County Recycling Corp. v. Yevoli*, 90 N.Y.2d 1000, 1001, 688 N.E. 2d 501, 502 (1997))).

¶ 54    "A zoning ordinance may be set aside only to the extent necessary to permit the *specific use* proposed by a property owner." (Emphasis in original.) *Texaco, Inc. v. Village of Schaumburg,* 135 Ill. App. 3d 1084, 1086 (1985) (citing *Schultz v. Village of Lisle*, 53 Ill. 2d 39 (1972)). The specific use proposed must be introduced into evidence and the court's decree must be framed with reference to the specific plan proposed. *Id.* (citing *Sinclair Pipe Line Co.*, 19 Ill. 2d 370). The purpose of the rule is to bind both the landowner and the governing body to the adjudication of one specific use and prevent the multiplicity of litigation. *Id*. (citing *Sinclair Pipe Line Co.*, 19 Ill. 2d 370).

¶ 55    While courts have authority to rule on the validity of a zoning ordinance, this authority does not include the power to determine the ultimate zoning classification of property. *La Salle National Bank v. City of Chicago,* 130 Ill. App. 2d 457, 460 (1970) (citing *Reeve v. Village of Glenview*, 29 Ill. 2d 611 (1963)); see also *Seiler v. City of Granite City*, 255 Ill. App. 3d 210, 212 (1993) (a trial court may not directly or indirectly rezone a parcel of property). The practical effect of declaring a zoning ordinance void with respect to a particular piece of property is to leave that property unzoned; therefore, the court may frame its order in reference to a specific proposal before it and find that the contemplated use would be reasonable. *La Salle National Bank*, 130 Ill. App. 2d at 460. However, the court must exercise this authority with extreme care to avoid encroaching on the legislative function of zoning. *Id*. The most a court may do after declaring an existing zoning ordinance void as applied to certain property is to find from the evidence before it that the specific

19

use contemplated by the owner is reasonable and may be permitted. *Id*. (citing *Fiore v. City of Highland Park*, 76 Ill. App. 2d 62, 76 (1966)).

¶ 56 Here, the trial court's order does not encroach on defendant's power to zone property within its borders. In its February 19, 2019 order, the trial court found for plaintiffs on Paragraphs A and B of their declaratory judgment action, ruling that (A) the county ordinance's classification of plaintiffs' property as Industrial is arbitrary, capricious and unreasonable; and (B) plaintiffs' proposed use of their property is reasonable. Such declarations were within the court's power to make. See *id*. We, therefore, affirm the trial court's order.

¶ 57                                   CONCLUSION

¶ 58 For the foregoing reasons, the judgment of the circuit court of Grundy County is affirmed.

¶ 59 Affirmed.